321 So.2d 304 (1975)
Charles L. NAUSE
v.
Ellen GOLDMAN.
No. 48409.
Supreme Court of Mississippi.
November 3, 1975.
*305 Michael R. Medley, W.F. Selph, Jr., Jackson, for appellant.
Allan D. Shackelford, Clarksdale, for appellee.
Before RODGERS, PATTERSON and SUGG, JJ.
RODGERS, Presiding Justice.
This is an appeal from a final judgment sustaining a demurrer to a declaration filed by the appellant in the Circuit Court of Quitman County, Mississippi, dismissing the plaintiff's action.
The only issue presented to this Court for determination is whether or not the demurrer was wrongfully sustained by the trial court.
The declaration filed by the plaintiff charges that numerous lawsuits were filed against the plaintiff during 1972, and that at that time he had other attorneys representing him. Some of these lawsuits were settled at a discount of 19.2% of the face value of the notes.
The declaration alleged that there were twenty-one (21) suits on notes filed against the plaintiff for one hundred thousand one hundred and seven dollars and ninety-eight cents ($100,107.98) all on unsecured notes, except four notes in the sum of thirty-three thousand four hundred sixty-eight dollars and twenty-four cents ($33,468.24); that plaintiff's wife was also a defendant on one note for three hundred ninety-two dollars and ten cents ($392.10); that the defendant represented plaintiff's wife; and that in order that one attorney should represent plaintiff as well as his wife, plaintiff terminated the employment of his former attorneys and employed the defendant Ellen Goldman to also represent him. It was further alleged that the attorney entered into negotiations for the plaintiff in these suits with First National Bank, and later informed the plaintiff that she could settle these claims for $100,107.98, the face value of the notes. Plaintiff authorized the settlement for this sum, but the following day the defendant attorney presented the plaintiff with one note due in six months to be signed by plaintiff, together with a deed of trust on property of the plaintiff to secure the note. It is said that the defendant represented to the plaintiff that this note would settle all the claims the bank had against the plaintiff, *306 and that these claims would be dismissed for the sum of one hundred twenty-two thousand two hundred fifty-eight dollars and ninety-six cents ($122,258.96). This sum was twenty-two thousand one hundred fifty dollars and ninety-eight cents ($22,150.98) more than the amount for which plaintiff had authorized the defendant to settle the claims, and the plaintiff believes that this sum was for attorneys' fees for the bank's attorneys.
It was also alleged that  as a matter of fact  the defendant had allowed default judgments on all the suits filed by the bank, although the claims had been previously settled. Plaintiff dismissed the defendant attorney and reemployed his former attorneys who promptly settled the claims for one hundred ten thousand eight hundred and eleven dollars ($110,811.00). This was eleven thousand four hundred forty-seven dollars and ninety-six cents ($11,447.96) less than the amount suggested by the defendant. It is then alleged that the "plaintiff verily believes that but for the negligence, errors and omissions committed by the defendant ... the claims could have been settled for approximately the rate at which the Deposit Guaranty National Bank claims were settled, at a 19.2% reduction of the face value of the notes, or $80,887.25... ." It was then alleged that the plaintiff was damaged in the amount of twenty-nine thousand nine hundred twenty-three dollars and seventy-five cents ($29,923.75).
It was also alleged that (a) thereafter the bank sued him for six hundred fifty-nine dollars and twenty-five cents ($659.25) due by him on a Master Charge account, which was not settled at the time the settlement was made due to the negligence of the defendant, and (b) while the defendant represented the plaintiff, the Hinds-Rankin Metropolitan Water and Sewer Association sued the plaintiff and during settlement negotiations, the defendant "made various statements ... of such a nature as necessarily result [sic] in extreme prejudice to the rights of plaintiff herein, and did in fact, ultimately result in the original suit for approximately $67,000.00 being finally settled for $70,000.00, that plaintiff herein verily believes that but for the negligence, errors and omissions of the defendant ... the original suit ... could have been settled for $40,000.00 ... representing an increase of $30,000.00 ..." of which the plaintiff was required to pay $12,500.00.
The plaintiff goes on in his declaration to say that the gross negligence of the defendant required him "to heavily encumber property owned by him to such an extent and degree that he is daily faced with the prospects of losing his property ... due to the acts of gross and reckless negligence on the part of Defendant... ."
The plaintiff then prayed judgment against the defendant in the sum of one hundred three thousand one hundred seventy-seven dollars and fifty cents ($103,177.50) actual and punitive damages.
The defendant filed a motion requesting the court to require the plaintiff to make his declaration more specific as to the acts of negligence alleged in each paragraph, and the specific elements of damages claimed. This motion was sustained, and the plaintiff answered and said that the specific words used by the defendant which caused the water and sewer association to claim and demand one hundred fifty thousand dollars ($150,000.00) instead of sixty-seven thousand dollars ($67,000.00) originally sued on were "She wished to sell plaintiff's house and all of his property in Madison County and give the money to Hinds-Rankin Metropolitan Water & Sewer Association, Inc." The appellant also alleged that the defendant required the plaintiff to consent and submit to numerous default judgments in spite of a new negotiable note executed by the plaintiff which included an attorney's fee of twenty thousand dollars ($20,000.00). Then, it is *307 said that because of the negligence of the defendant, the plaintiff was forced to secure a deed of trust in the sum of two hundred and fifteen thousand dollars ($215,000.00) on property in Madison County and another on a residence in Hinds County. The plaintiff then details various items of damages he had to pay because the defendant did not settle lawsuits at a sum for which plaintiff thought the defendant should have settled the claims.
The appellee filed a demurrer to the amended declaration upon the premise that the declaration stated no cause of action against the defendant. The demurrer was sustained, and the plaintiff appealed to this Court from a final judgment dismissing plaintiff's case upon his failure to amend his declaration.
Appellant now contends that the declaration against the defendant did state a cause of action and in support thereof, he cites the case of Thompson v. Erving's Hatcheries, Inc., 186 So.2d 756 (Miss. 1966), wherein this Court quoted from 7 Am.Jur.2d Attorneys at Law § 188, at 156 (1963), as follows:
"In an action against an attorney for negligence or violation of duty, the client has the burden of proving the existence of the relation of attorney and client, the acts constituting the alleged negligence, that the negligence was the proximate cause of the injury, and the fact and extent of the injury alleged." 186 So.2d at 759 (Miss. 1966).
The appellant argues that he alleged the essentials required (1) that the defendant was employed as his attorney; (2) that she was negligent in that she could have settled claims filed against the appellant for a less sum than was agreed upon; (3) that part of the settlement was for attorney's fees to the claimant's attorney; (4) that she permitted default judgments on claims then in the process of being settled, and (5) that she said the appellant would sell certain property in Madison County and pay it to a claimant in that county.
It is said by the appellee that the trial judge sustained the demurrer because the plaintiff did not allege that he had a valid defense to the claims settled by the appellee. It is apparent to us, however, that the appellant had no defense to the various notes and claims. In fact, the appellant must have owed the claims because he agreed to the various settlements, although they were not as little as he desired.
It is said in 7 C.J.S. Attorney and Client § 146, at 983 (1937):
"An attorney is not liable for negligence in the conduct of litigation where, notwithstanding such negligence in the prosecution or defense of a suit, the client has no cause of action or meritorious defense as the case may be."
This rule has been adopted in this state beginning with Grayson v. Wilkinson, 5 Smedes & M. (13 Miss.) 268 (1845), and in the following cases: Hoover v. Shackelford, 23 Miss. 520 (1852), and Thompson v. Erving's Hatcheries, Inc., 186 So.2d 756 (Miss. 1966).
In the Thompson case, supra, this Court quoted from Annot., 45 A.L.R.2d § 5, at 19 (1956), as follows:
"`The ordinary rule that negligence is actionable only where it is the proximate cause of the damages complained of has frequently been applied in actions against attorneys for alleged negligence in connection with litigation. In such cases the damages claimed are usually the value of the claim lost or judgment suffered as an alleged result of the attorney's negligence, and it has frequently been held that the lawyer may not be found liable unless it appears that if the action had been properly prosecuted or defended the client would have been successful.'" 186 So.2d at 759.
*308 It was also pointed out in Thompson that Dean John W. Wade of the Vanderbilt University School of Law made an exhaustive research into the question of an attorney's liability for negligence, and came to the conclusion that:
"`There has been universal agreement that a lawyer is not an insurer or guarantor of the correctness of his work or of the result which will be attained. He is liable only for negligent failure to use the requisite care or skill.'" 186 So.2d at 758.
It has been said by at least one text writer that attorneys are held to the same rule of liability for want of professional skill and diligence in practice and for erroneous or negligent advice as doctors, surgeons and other experts in their respective trades. An attorney is liable for any misfeasance or unreasonable neglect whereby his client suffers loss. However, an attorney is not bound to exercise extraordinary diligence, but only reasonable care and skill considering the business undertaken. "He is not answerable for every error or mistake, and will be protected as long as he acts honestly and in good faith to the best of his skill and knowledge, or with at least reasonable skill and learning and an ordinary degree of attention or care." 5 Am. Jur. Attorney at Law § 125, at 335 (1936).
From the facts alleged in the declaration in this case it is not shown that the defendant attorney caused the plaintiff to pay money he did not owe, but, rather, that some other attorney could have settled the amount owed by the plaintiff for less than the appellee settled the claims.
We agree with the trial court that the declaration does not sufficiently allege loss as a result of the alleged negligence of the appellee; nor do we find that the alleged statement made to the counsel for the Hinds-Rankin Metropolitan Water & Sewer Association, Inc., that "She wished to sell plaintiff's house and all of his property in Madison County and give the money to ... [them] in order to stop the lawsuit" was sufficient to show actionable negligence on the part of the defendant attorney. Attorneys are required to discuss their clients' cases with adversary attorneys when they are attempting to make a settlement of a claim, and if they act in good faith, they are not liable for every statement made as if they were insurers.
We are of the opinion that the trial court acted properly in sustaining the demurrer.
The judgment of the trial court is therefore affirmed.
Affirmed.
GILLESPIE, C.J., and INZER, SMITH, ROBERTSON, WALKER and BROOM, JJ., concur.