GRIFFIN, Justice,
for the Court:
This case, involving legal malpractice, comes to the Court from the Circuit Court of the First Judicial District of Hinds County, where a jury awarded $1,410.00 to J.C. Bass. We affirm.
On February 14, 1973, J.C. Bass executed a deed of trust on land to Brookha-ven Production Credit Association. On August 23, 1974, he also executed a note for $191,560 to the association, payable August 15, 1975.
In May, 1975, Bass applied for another loan of $318,995, which Thomas Caves, the association’s president, deemed “completely out of line.” In June, Bass reapplied for a loan of $181,120; Caves again responded, “I do not intend to be rude, but I want to convey to you that this association does not expect to make such advances to you.”
On July 29, 1975, Bass met with Hollis Alford, who worked for the association, and together they drafted an application for a loan guarantee from the Farmers Home Administration (FmHA), seeking funds to pay past due debts, purchase calves, plant crops, and maintain the farm. On August 22, 1975, Bass submitted the application; however, the purpose of the loan now read, “Refinance PCA Loan.”
Bass contends that he signed the submitted application in blank, and was unaware of any changes made thereafter. Alford denies the accusation, claiming that Bass signed the completed, submitted appli *1173 cation. In either event, the FmHA guaranteed the association to $180,000.
On September 8, 1975, Bass executed a second deed of trust to the association, when applying for a loan of $205,950, payable the following year. From these proceeds, Bass expected to receive $186,100 in fresh funds as a result of the guarantee.
The association’s loan application stated,
(c) That unless and until the Association has finally approved this application in whole or in part by giving written notice thereof to applicant, the Association is under no obligation to make any loan or advance to him, and the execution or delivery by applicant to the Association or any employee thereof, of any note, mortgage, or other instrument shall not be construed as an approval of all or any part of the loan here applied for and shall not obligate the Association to make any loan or advance to applicant.
In fact, Bass received nothing, since the Federal Intermediate Credit Bank of New Orleans, which oversaw the association, denied the loan. Consequently, the association cancelled the second deed of trust, which it had recorded. The association also refused to subordinate its security interest to Kansas City Life Insurance Company, which had offered Bass $150,000 in long-term financing in return for a first mortgage.
On October 28, 1975, Caves wrote Bass that “the association [had] agreed to carry the present loan [due August 15, 1975] in default until January 1, 1976, to allow you time to obtain refinancing_” In response, Bass hired C.R. Montgomery, an attorney, to stop any foreclosure and to recover damages from the association, following the alleged alteration of the FmHA’s loan guarantee application.
Thereafter, when the association initiated a replevin action in Amite County, where Bass’ farm was located, Montgomery counterclaimed for $500,000 in damages alleging fraud, and filed in the Chancery Court of Amite County both to enjoin foreclosure and to set aside the first deed of trust, again alleging fraud. On Motion, the chancellor granted the association a demurrer, and Bass appealed to this Court. While the association then continued toward foreclosure, Bass filed a petition for voluntary bankruptcy and reapplied with the FmHA.
When the FmHA agreed to loan Bass funds, nearly sufficient to pay his indebtedness, the association offered to wait three years for the remaining balance, approximately $17,000, if Bass would drop his appeal to this Court. Both Bass and Montgomery recall that Bass refused the offer.
Upon further negotiation with the FmHA, Bass received sufficient loan proceeds to pay the association in full. As a result, he was dismissed from bankruptcy. Montgomery then dismissed Bass’ appeal from the Chancery Court of Amite County.
Bass vehemently denies that he authorized the dismissal, especially after he had paid the association his outstanding debt. When asked about such authorization, Montgomery responded, “I can’t recall the time and date, but I’m ... just absolutely positive that he understood, appreciated and approved that action”. Nevertheless, Bass contends that he knew only that this Court had dismissed the appeal, and not that his own attorney had agreed to the dismissal.
On June 13, 1978, approximately six months after the appeal’s dismissal, Bass refiled against the association in the Circuit Court of Lincoln County, alleging fraud, unlawful expulsion from the association, and intentional infliction of emotional distress, and seeking $1,250,000 in actual damages and $5,000,000 in punitive damages. Bass hired John E. Gregg, an attorney, to attend the suit, and Montgomery to “assist and cooperate” in the proceedings. The circuit judge though found that “the action was barred by the doctrine of res judicata,” due to the previous litigation between the parties in Amite County. Bass sought an appeal, paying his attorneys $1,000 for its prosecution, but when they failed to pay the costs of $410, this Court dismissed the appeal.
Bass maintains that Gregg not only failed to pay the costs, but also misled him as to the Court’s disposition of the case. *1174 Specifically, he contends that Gregg informed him that the appeal had been dismissed, but without any explanation as to the reason. Montgomery admitted that he had made no effort to contact Bass. Rather, it was when Bass himself reviewed the court records, two years later, that he discovered the reasons for his appeal having been dismissed. Gregg disputes this contention, stating that he mailed Bass photocopies of the court records.
The jury was instructed as to the elements of legal malpractice, set forth in Holleman, infra. In addition, the instructions allowed the jury to award Bass costs, associated with the last appeal, totalling $1,410, as well as other damages. None of the instructions are assigned as error.
The jury found against the appellees in the amount of $1,410. Apparently, the ap-pellees agree, as there is no cross-appeal.
Initially, Bass contends that the trial judge erred, when he denied Bass’ motion for an additur, and in the alternative, a new trial. Miss.Code Ann. § 11-1-55 (Supp. 1987) reads,
The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an addi-tur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remit-titur.
Consistent with the above, this Court has held that the “same rule applies in determining whether an additur is proper, as applies in determining if the amount of damages awarded is excessive. Smith v. Washam, 288 So.2d 20, 22 (Miss.1974). In short, the Court determines whether the “award by the factfinder was influenced by bias, prejudice, or passion, or [was] contrary to the overwhelming weight of credible evidence.” Jesco, Inc. v. Shannon, 451 So.2d 694, 704 (Miss.1984). See also, Hynum v. Smith, 447 So.2d 1288, 1290 (Miss. 1984), Winston v. Cannon, 430 So.2d 413, 417 (Miss.1983), Toyota Motor Co., Ltd. v. Sanford, 375 So.2d 1036, 1038 (Miss.1979).
Here, Bass sought to prove malpractice, contending that Montgomery had dismissed an appeal without authorization, and as a result, another court had barred a second suit, the appeal of which Montgomery and Gregg failed to perfect. Additionally, Bass contends that “testimony, documentary evidence, and the law” established his claims against Brookhaven Production Credit Association, including (1) fraud and misrepresentation, surrounding the FmHA's loan guarantee and the association’s proposed $205,950 loan to Bass; (2) breach of contract for failure to make the $205,950 loan, and (3) premature foreclosure of the second deed of trust.
In Hickox by and through Hickox v. Holleman, 502 So.2d 626, 633 (Miss.1987), the Court stated, “To recover in [a legal malpractice] case in this state, it is incumbent upon the plaintiff to prove by a preponderance of evidence the following:
1. Existence of a lawyer-client relationship,
2. Negligence on the part of the lawyer in handling his client’s affairs entrusted to him, and
3. Proximate cause of injury.
See also, Hutchinson v. Smith, 417 So.2d 926, 927-28 (Miss.1982), Nause v. Goldman, 321 So.2d 304, 307 (Miss.1975); Thompson v. Erving’s Hatcheries, Inc., 186 So.2d 756, 759 (Miss.1966).
This case particularly concerns the element of proximate cause. Previously, this Court has stressed that there is no liability “unless it appears that if the action had been properly prosecuted or defended, the client would have been successful.” Nause, 321 So.2d at 307, Thompson, 186 *1175 So.2d at 759, Grayson v. Wilkinson, 13 Miss. (5 S. & M.) 268, 288-90 (1845). As a result, the issues raised in Bass’ previous litigation with the association were “made up and tried in the legal malpractice suit,” now on appeal. Holleman, 502 So.2d at 634.
In this case, the jury heard testimony from Alford that Bass had signed the completed, submitted application form, which listed refinancing as the guarantee’s purpose. The jury also heard testimony from Caves that Bass’ application for the $205,-950 loan was subject to approval from the Federal Intermediate Credit Bank of New Orleans, and that Bass was aware of this requirement. The jury also heard testimony from Montgomery that Bass had approved the first appeal’s dismissal in this Court. Finally, the jury heard that Bass’ loan, due August 15, 1975, was in default, when the foreclosure proceedings began.
On these facts, this Court cannot now hold that the jury’s verdict either evinced bias, prejudice, or passion or was contrary to the overwhelming weight of credible evidence, where there was substantial evidence to support the jury’s resolution of the factual disputes.
Bass also contends that the trial judge erred, when he admitted court records, concerning a suit between Bass and the FmHA, which Gregg had prosecuted. The appellees respond that the records were relevant, since the attorney’s fees, charged in that case, were an element of damages in this suit. Although the Court believes that these records were admissible, it is unnecessary to make a specific finding under the present facts. Miss.Sup.CtR. 11 (No Reversal for Harmless Error).
In conclusion, the Court notes its sympathy for Mr. Bass’ plight. With increasing frequency, our cases involve farmers who, through no fault of their own, find themselves at the mercy of a farm economy which seems to impoverish not only the body, but the spirit as well. Nevertheless, finding no error, we affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.