IN THE SUPREME COURT OF MISSISSIPPI
NO. 93-CA-00317-SCT

*ROSS-KING-WALKER, INC.*

*v.*

*HELEN HENSON AND TRIPLE A PAINTING, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/30/92 |
| TRIAL JUDGE: | HON. MICHAEL RAY EUBANKS |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT J. DAMBRINO, III |
| | CAROL ANN ESTES |
| ATTORNEYS FOR APPELLEES: | LAWRENCE E. ABERNATHY, III |
| | JOHN T. KERSH |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | DIRECT APPEAL: AFFIRMED; CROSS-APPEAL: REMITTITUR REVERSED - 3/28/96 |
| MOTION FOR REHEARING FILED: | 4/5/96 |
| MANDATE ISSUED: | 5/23/96 |

**BEFORE PRATHER, P.J., PITTMAN AND SMITH, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## I. INTRODUCTION

¶1. At issue in this lawsuit is the sufficiency of evidence to support an award of actual and punitive damages for the alleged failure of the insurance company to disclose that workers' compensation death benefits coverage existed on this self-insured person. Additionally, the cross-appellant widow appeals the propriety of the reduction of the punitive award.

## II. FACTS AND PROCEDURAL HISTORY

¶2. This case involves a suit against an insurance agency for tortious breach of contract, breach of fiduciary duties, and fraud in the inducement. The record reflects that Joe Henson (Joe), owned Triple A Painting (AAA), a paint contracting business. For approximately fifteen years, Joe relied on the Ross-King-Walker

insurance agency (RKW) to handle his insurance needs. On November 24, 1985, Joe died while working. His son, William Allan Henson (Allan), took over his father's position at the helm of AAA. Allan testified that he repeatedly questioned RKW employees to determine whether his father's death was covered by insurance, and that RKW consistently denied that any coverage existed. In fact, AAA had a workers' compensation policy in effect at the time of Joe's death.

¶3. Joe's widow, Helen Henson (Helen) and AAA brought suit against RKW for (a) breach of fiduciary duty, (b) negligent mispresentation and (c) fraudulent mispresentation. The jury awarded the plaintiffs $59,750 in actual damages and $135,000 in punitive damages. Thereafter, RKW moved for judgment notwithstanding the verdict (J.N.O.V.), or in the alternative for a new trial, or in the alternative for a remittitur. The trial court denied the motion for J.N.O.V. and the motion for a new trial, and granted the motion for remittitur with regard to the punitive damage award. The trial court ordered that the punitive damages award be reduced from $135,500 to $119,500 "so as not to allow greater damages than treble damages in this particular case."

¶4. On appeal, RKW raises the following issues:

**A. WHETHER THE TRIAL COURT WAS CORRECT IN DENYING THE J.N.O.V./NEW TRIAL MOTION BECAUSE THERE WAS SUFFICIENT EVIDENCE TO SUPPORT PLAINTIFF'S FRAUDULENT MISREPRESENTATION CLAIM?**

**B. WHETHER THE TRIAL COURT WAS CORRECT IN DENYING THE J.N.O.V./NEW TRIAL MOTION BECAUSE THERE WAS SUFFICIENT EVIDENCE TO SUPPORT PLAINTIFF'S CLAIM FOR NEGLIGENT MISREPRESENTATION?**

**C. WHETHER THE TRIAL COURT WAS CORRECT IN DENYING THE J.N.O.V./NEW TRIAL MOTION BECAUSE THE VERDICT OF THE JURY WAS SUPPORTED BY THE OVERWHELMING WEIGHT OF THE EVIDENCE?**

**D. WHETHER THE COURT WAS CORRECT IN DENYING THE MOTION FOR J.N.O.V./NEW TRIAL MOTION BECAUSE THERE WAS SUFFICIENT EVIDENCE TO SUPPORT AN AWARD OF PUNITIVE DAMAGES?**

¶5. Helen and AAA filed a cross-appeal based on the following issue:

**E. WHETHER THE TRIAL COURT ERRED BY ORDERING A REMITTITUR OF THE PUNITIVE DAMAGES?**

¶6. The first three arguments raised by the appellant involve the sufficiency of the evidence. The standard for reviewing such issues is well-settled:

> [T]his Court should consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, this Court is required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.

*Leaf River Forest Products, Inc. v. Ferguson*, 662 So. 2d 648, 659 (Miss. 1995) (citations omitted).

### III. <u>LEGAL ANALYSIS</u>

**A. WHETHER THE TRIAL COURT WAS CORRECT IN DENYING THE J.N.O.V./NEW TRIAL MOTION BECAUSE THERE WAS SUFFICIENT EVIDENCE TO SUPPORT PLAINTIFF'S FRAUDULENT MISREPRESENTATION CLAIM?**

**B. WHETHER THE TRIAL COURT WAS CORRECT IN DENYING THE J.N.O.V./NEW TRIAL MOTION BECAUSE THERE WAS SUFFICIENT EVIDENCE TO SUPPORT PLAINTIFF'S CLAIM FOR NEGLIGENT MISREPRESENTATION?**

¶7. RKW's first two arguments focus on whether Allan and his mother, Helen, relied on RKW's statement that there was no coverage for Joe's death. Allan and Helen's basic theory at trial seemed to be that RKW deceived them about the applicable coverage, and, as a result, they did not file a timely claim. The jury was instructed on three theories: (a) breach of fiduciary duty, (b) negligent misrepresentation, and (c) fraudulent misrepresentation. RKW argues that, because reliance is an element of both negligent and fraudulent misrepresentation, and because Allan and Helen did not believe RKW's misrepresentation, Allan and Helen were not entitled to recover. However, considering the evidence in the light most favorable to the appellees, this argument fails.

¶8. There is evidence that the Hensons relied on RKW's representations. Allan testified numerous times that he depended on RKW to tend to his insurance needs. Furthermore, Allan gave testimony that on previous occasions, he had called RKW and they had taken care of claims as well as certificates of insurance for clients. RKW employed a full-time claims person during this period who could have helped Allan file the appropriate forms. Allan admitted that he was not knowledgeable about the insurance aspect of his father's business, but stated that he relied on RKW because his father had in the past. Allan testified that he may have signed some insurance forms before, but that he never filled in the information on the forms. Allan testified that he repeatedly requested a copy of the policy and RKW never provided him with one.

¶9. The jury could have believed that Allan told RKW that his father died while working, and that Allan asked RKW to help him get the benefits to which he was entitled, and that RKW told him there was no coverage. Allan and Helen made further inquiries, and discussed the matter with their attorneys. RKW told the attorneys that there was no coverage. Thus, given the standard of review outlined above, there was substantial evidence that Allan and Helen relied on RKW's statement that there was no coverage, and did not file a claim for the benefits to which Helen was entitled.

¶10. In addition, although the jury was instructed on negligent and fraudulent misrepresentation, it was also instructed on breach of fiduciary duty. The jury could have found that RKW breached a fiduciary relationship -- regardless of whether Allan and Helen believed RKW or not. Therefore, RKW's argument on this point is without merit.

**C. WHETHER THE TRIAL COURT WAS CORRECT IN DENYING THE J.N.O.V./NEW TRIAL MOTION BECAUSE THE VERDICT OF THE JURY WAS SUPPORTED BY THE OVERWHELMING WEIGHT OF THE EVIDENCE?**

¶**11.** Again, RKW argues that the Hensons did not rely on RKW's statements. Based on this assertion,

which has already been addressed and dismissed, RKW contends that the verdict was against the overwhelming weight of the evidence. Whether the trial judge should have granted a new trial on this basis was within his discretion. *American Fire Protection, Inc. v. Lewis*, 653 So. 2d 1387, 1390 (Miss. 1995). "[A]bsent an abuse of discretion, this Court is 'without power to disturb such a determination.'" *Id.* (citations omitted). For the reasons outlined in the previous section, the trial judge did not abuse his discretion by denying RKW's motion for a new trial.

## D WHETHER THE TRIAL COURT WAS CORRECT IN DENYING THE MOTION FOR J.N.O.V./NEW TRIAL MOTION BECAUSE THERE WAS SUFFICIENT EVIDENCE TO SUPPORT AN AWARD OF PUNITIVE DAMAGES?

### 1. Appropriateness of Punitive Damages

¶12. RKW first argues that there was insufficient evidence to support an award of punitive damages.

¶13. For punitive damages to be awarded, the injuries must have "some element of aggression or some coloring of insult, malice, or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule." *Finkelberg v. Luckett*, 608 So. 2d 1214, 1220 (Miss. 1992). That is, the plaintiff is entitled to recover punitive damages "only if he has demonstrated a willful or malicious wrong or the gross, reckless disregard for the rights of others." *Boling v. A-1 Detective & Patrol Service, Inc.*, 659 So. 2d 586, 588 (Miss. 1995); *Strickland v. Rossini*, 589 So. 2d 1268, 1273 (Miss. 1991); *see also* Miss. Code Ann. § 11-1-65 (Supp. 1995).

> In determining the propriety of submitting the issue of punitive damages to the jury, the trial court decides whether, under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard.

*Ciba-Geigy Corp. v. Murphree*, 653 So. 2d 857, 863 (Miss. 1994), citing *Colonial Mortg. Co., Inc. v. Lee*, 525 So. 2d 804, 808 (Miss. 1988).

¶14. RKW argues that there was no evidence of malice or ill will of any kind in this case. Indeed, the Chairman of the Board of RKW testified that he liked Joe Henson, and thus, the granting of punitive damages was error. However, there was also evidence to suggest that if RKW's customers filed too many claims, RKW could lose the business of the insurance companies. The claim arising from Joe's death would be a factor in determining RKW's loss ratio, and there was testimony that keeping the loss ratio low was an important factor in being selected to be an agent for insurance companies.

¶15. Furthermore, malice or ill will is not necessary for a punitive damages award. As discussed above, punitive damages are also appropriate where the defendant acts with reckless disregard for the rights of others. RKW knew that AAA's workers' compensation policy was in effect when Joe died. There was testimony that RKW was informed that Joe's death occurred during the scope and course of his employment. RKW represented that there was no policy in effect to cover Joe's death, and thereby acted with reckless disregard for the Hensons' rights.

¶16. "Application of punitive damage 'principles are not ironclad.' Whether a particular act or conduct justifies assessment of punitive damages 'cannot come from a precise formula, but rather must come from the trial judge's life experience.'" *Finkelberg*, 608 So. 2d at 220 (citations omitted). A breach of fiduciary

duties has been recognized by this Court as an "extreme or a special additional circumstance" where punitive damages can be allowed. *Fought v. Morris*, 543 So. 2d 167, 173 (Miss. 1989). Based on the foregoing analysis, there was sufficient evidence to submit to the jury the issue of allowing a punitive damage award.

## 2. Amount of Punitive Damages

¶17. RKW next argues that the amount of punitive damages in this case was unconstitutionally excessive. There is no "hard and fast rule" regarding the maximum amount of punitive damages that can be awarded. "Indeed, no 'yardstick' could possibly be created to measure such awards since totality of the circumstances attendant a case varies on an ad hoc basis." *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1191 (Miss. 1990). The standard for reviewing punitive damages is to "give due consideration to the degree and nature of transgression from reasonable and lawful practices and the likely harmful effect upon the individual litigant and the public." *Id.* (citations omitted).

¶18. In the context of insurance policy interpretation, this Court has noted that only a very small percentage of policy holders "are actually cognizant of the provisions of their policies and many of them are ignorant of the names of the companies issuing the said policies. . . . [C]ourts, while zealous to uphold legal contracts . . . should [not] be slow to aid the confiding and innocent." *Crawley v. American Public Life Ins. Co.*, 603 So. 2d 835, 841 (Miss. 1992). The evidence is uncontradicted that the Hensons totally relied on RKW to take care of their insurance needs and paid substantial sums to RKW over a course of many years. RKW's actions in this case harmed the Hensons, and that harm could be visited upon other unsuspecting insurance customers in the future. RKW made a misrepresentation to the Hensons and their legal representatives about coverage. This Court acts to deter such wrongdoing in the future.

> Under current Mississippi law, the "quantum" of a punitive-damages award is measured upon consideration of certain general factors. First, the amount awarded should serve to punish the insurer and to deter it from committing similar offenses in the future. Second, the amount should serve as an example set to deter others from committing similar offenses. Third, the amount awarded should account for the insurer's pecuniary ability and financial worth. And fourth, the amount constitutes compensation for the plaintiff for his or her "public service" in bringing the action.

*Williams*, 566 So. 2d at 1190.

¶19. RKW argues that they had a negative net worth and that, therefore, the award of punitive damages in this case was improper. However, net worth is only one factor to consider. Moreover, the record also reflected that RKW had $943,522 in assets.

> Measurement of the amount [of punitive damages] is a matter solely committed to the jury's fettered discretion. Generally, the jury's determination will remain undisturbed. However, an award may be vacated or reduced in some cases for exceptional reasons.

*Id.*; *Fought*, 543 So. 2d at 173.

¶20. Those reasons can include the fact that the amount is arbitrary or unreasonable, against the overwhelming weight of the evidence, or evinces passion, bias and prejudice on the part of the jury so as to shock the conscience. *Williams*, at 1190-91. There is no evidence that any of these reasons are present in this case.

¶21. "Of utmost significance, a jury verdict *will not be disturbed* simply because it seems 'too high' or 'too low.'" *Id.* (citations omitted). There was sufficient evidence to support the jury's award of punitive damages in this case.

## E. WHETHER THE TRIAL COURT ERRED BY ORDERING A REMITTITUR OF THE PUNITIVE DAMAGES?

¶22. On cross-appeal, the appellees argue that the trial judge should not have granted the remittitur of the punitive damages from $135,000 to $119,500.

¶23. Section 11-1-55 of the Mississippi Code provides that:

> The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages were contrary to the overwhelming weight of credible evidence . . .

Miss. Code Ann. § 11-1-55 (Supp. 1995).

¶24. The standard of review in these cases is well-settled.

> Motions challenging the quantum of damages and seeking a remittitur are by their very nature committed to the sound discretion of the trial judge. Where the trial judge acts upon these matters, we reverse only if he has abused or exceeded his discretion.

*C&C Trucking Co. v. Smith*, 612 So. 2d 1092, 1106 (Miss. 1992); *Bass v. Montgomery,* 515 So. 2d 1172, 1174 (Miss. 1987).

¶25. This Court will not vacate or reduce an award of damages, "unless it is so out of line as to shock the conscience of the Court." *Kern v. Gulf Coast Nursing Home of Moss Point, Inc.*, 502 So. 2d 1198, 1201 (Miss. 1987). It appears that the trial judge wanted to reduce the punitive damage award so that the total recovery would be three times the amount of actual damages -- including the award of actual damages. This Court has never placed an arbitrary cap on a punitive damage award at triple the actual damage award. There was nothing about the original award of $135,000 that would "shock the conscience." There is no evidence that the jury was influenced by bias, passion or prejudice. There was no justification for the order of remittitur in this case, and the trial judge abused his discretion by placing an arbitrary limit on the award. Therefore, the trial judge's order of remittitur is reversed and the jury verdict is reinstated.

¶26. DIRECT APPEAL: JUDGMENT IS AFFIRMED. CROSS-APPEAL: THE JUDGMENT OF REMITTITUR IS REVERSED AND THE ORIGINAL JURY VERDICT IS REINSTATED.

LEE, C.J., SULLIVAN, P.J., PITTMAN, BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.