992 F.2d 1220
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Howard Lee WHITE, Plaintiff-Appellant,
v.
AMERICAN TOBACCO CO., Defendant-Appellee.
 No. 91-16911.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 16, 1993.*
Decided April 28, 1993.
 
 Before SCHROEDER, PREGERSON and D.W. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Howard Lee White ("White") appeals pro se from the district court's grant of summary judgment in favor of defendant American Tobacco Company ("American Tobacco") in White's suit to recover for personal injuries caused by the defendant's tobacco. White alleges that the district court erred by: (1) denying White's requests for the appointment of counsel; (2) denying White's request for the appointment of an expert witness; (3) refusing to grant leave for White to file a Second Amended Complaint; and (4) granting summary judgment in favor of American Tobacco. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 I. BACKGROUND
 
 3
 White is an inmate at the Nevada State Prison in Indian Springs, Nevada. In December of 1986, while confined at the Clark County Detention Center, White was given American Tobacco's Genuine Durham Smoking Tobacco ("GDST"). At either the same time or shortly thereafter White began to complain of throat irritation, and antibiotics were prescribed. White's throat irritations continued; in October 1987 and February 1988 he was diagnosed as having pseudomonas infection, and in November 1988 he was diagnosed as having squamous cell carcinoma of the right vocal chord. Appropriate treatment was provided. Despite the throat irritations, White smoked GDST until July 1987 and continued to smoke other types of tobacco for some time after that.
 
 
 4
 White contends that his use of GDST during that six-month period caused his throat irritations, pseudomonas infection, and cancer.[1] On January 31, 1989, White filed a complaint against American Tobacco and several prison authorities, seeking to recover under several common law tort theories and under federal law. On July 19, 1990, the district court entered partial summary judgment for defendants on the federal causes of action and dismissed the state defendants; White's state law product liability claims against American Tobacco remained. On December 2, 1991, after extensive discovery, the district court granted summary judgment in favor of American Tobacco on the ground that White had presented no competent evidence of causation. [ER 198-99] This timely appeal followed.
 
 II. DISCUSSION
 A. Refusal to Appoint Counsel
 
 5
 White filed three motions for the appointment of counsel, each of which was denied. [ER 2, 3-4, 186-87] Under 28 U.S.C. § 1915(d), a "court may request an attorney to represent" a person who is proceeding in forma pauperis. We review the district court's decision for an abuse of discretion. Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir.1991).
 
 
 6
 The court may appoint counsel under section 1915(d) only under "exceptional circumstances." "A finding of exceptional circumstances requires an evaluation of both 'the likelihood of success on the merits and the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.' Neither of these factors is dispositive and both must be viewed together before reaching a decision."
 
 
 7
 Id. (citations omitted).
 
 
 8
 The district court recognized its duty to evaluate these factors. At the time of the first motion, the court was "not convinced that the appointment of counsel [was] justified on the merits of Plaintiff's complaint." [ER 2] In denying the later motions, the court stated that "based upon 'the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved,' " appointment of counsel or an inmate law clerk was not justified. [ER 3-4, 186-87]
 
 
 9
 Moreover, White has demonstrated ample ability to pursue this case on his own behalf. Despite his illness, his radiation treatments, and his incarceration, White was an active participant in the two-year discovery phase of this litigation.[2] Furthermore, White is no stranger to the courts; he has appeared pro se in numerous actions, including several before this circuit. [Red Brief at 5; ER 16-20] The district court did not abuse its discretion in denying White's motions for appointment of counsel.[3]
 
 B. Refusal to Appoint Expert
 
 10
 On October 9, 1990 White filed a motion requesting the appointment of an expert witness, Dr. Elmer Palitang, to investigate White's claims and to testify at trial.
 
 
 11
 The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection.
 
 
 12
 Fed.R.Evid. 706(a). A magistrate denied the motion on January 31, 1991, finding "no basis to appoint an expert at Court expense." [ER 14] Appointments under Rule 706 are reviewed for abuse of discretion. Students of Cal. Sch. for the Blind v. Honig, 736 F.2d 538, 549 (9th Cir.1984), vacated as moot on other grounds, 471 U.S. 148 (1985).
 
 
 13
 As a preliminary matter, American Tobacco contends incorrectly that we have no jurisdiction over this issue because White failed to seek review of the magistrate's order in the district court.
 
 
 14
 In reviewing a final judgment, we have jurisdiction to review interlocutory rulings that may have affected the outcome of the proceedings in the district court. While the magistrate's ruling was not a ruling by the district judge, it nevertheless affected the outcome of the trial and is therefore reviewable on appeal.
 
 
 15
 U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff, 768 F.2d 1099, 1103 (9th Cir.1985) (citations omitted). American Tobacco nevertheless argues that the issue is not before this court because White's Notice of Appeal did not identify the magistrate's order as a "judgment, order or part thereof appealed from" per Fed.R.App.P. 3(c). However, "a mistake in designating the judgment appealed from should not bar appeal" as long as we can infer the intent to appeal that judgment and the appellee suffers no prejudice from the error. Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 772 (9th Cir.1991) (citations omitted). Where, as here, "the appellee has argued the merits fully in its brief, it has not been prejudiced by the" error. Id. We therefore address the merits of White's claim.
 
 
 16
 At the time that White filed his motion, he had already submitted a list of ten expert witnesses with whom he claimed to have communicated regarding his medical complaints. [ER 150-52] Moreover, White admitted during deposition that he obtained Dr. Palitang's name from the telephone book, knew nothing of Dr. Palitang's qualifications beyond the fact that he was described as a specialist in infectious diseases, and had never contacted Dr. Palitang.[4] [ER 8-13]
 
 
 17
 White argues that the appointment of an independent expert was required because his treating physicians had been cautioned not to discuss the case with him. White points to no evidence of such "warnings" besides the standard cautionary language which appeared on the prison medical consultation forms.[5] In fact, one of these experts, Dr. Richard L. Wagner, submitted an affidavit on White's behalf; another expert, Dr. Mellonese Harrison, submitted a declaration on behalf of American Tobacco. Under these circumstances, we cannot say that it was an abuse of discretion for the magistrate to refuse to appoint an expert.
 
 C. Refusal to Grant Leave to Amend
 
 18
 On July 31, 1991, White filed a motion to file a Second Amended Complaint. The district court denied the motion in the December 2, 1991 order, finding that it was "either meritless or [had] been made moot" by the grant of summary judgment. [ER 199] Once a responsive pleading is served, a party may amend its pleading "only by leave of court or by written consent of the adverse party[,] and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Denial of leave to amend is reviewed for abuse of discretion. Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 798 (9th Cir.1991). Given the "strong policy permitting amendment," however, such denial is "strictly reviewed." Id. (citations omitted). Denial may be justified by undue delay, bad faith, futility, and prejudice to the opposing party. Id.; see also Lockman, 930 F.2d at 772 (court may decline to grant leave to amend where there is "any apparent or declared reason" for denial) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).
 
 
 19
 Although the district court did not elaborate its reasons for denying leave to amend, the record contains ample support for the decision. White filed his motion while American Tobacco's motion for summary judgment was pending and almost two years after the filing of the first amended complaint. "A motion for leave to amend is not a vehicle to circumvent summary judgment." Schlacter-Jones v. General Tel. of Cal., 936 F.2d 435, 443 (9th Cir.1991). Moreover, the "discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint." Fidelity Fin. Corp. v. Federal Home Loan Bank of San Francisco, 792 F.2d 1432, 1438 (9th Cir.1986), cert. denied, 479 U.S. 1064 (1987). White filed a First Amended Complaint on September 12, 1989.
 
 
 20
 White's Second Amended Complaint was, in essence, a better-organized version of his First Amended Complaint. Besides omitting the allegations which had already been dismissed by the district court, the complaint replaced the allegations concerning the dates of White's specific ailments and treatments with the claim that White sustained injuries and illness as a result of using GDST "on or about December 18, 1986." The proposed complaint also contained "new" information which was already in the record, such as the grades of tobacco contained in GDST and the fact that American Tobacco had since stopped manufacturing the product. White's basic allegations, however, as well as his theories of recovery, essentially remained the same. Cf. id. (party merely restated "its prior claims under new labels").
 
 
 21
 More importantly, "[d]enial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile." Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir.1987). At the same time that it considered White's motion, the district court granted summary judgment in favor of American Tobacco on the grounds that White had presented no evidence which could support a causal relationship between his injuries and his use of GDST. [ER 199] The Second Amended Complaint contained no new evidence relevant to the issue of causation, and thus could not have defeated the motion for summary judgment. It was not an abuse of discretion for the district court to deny White leave to file his Second Amended Complaint.
 
 D. Summary Judgment
 
 22
 The district court granted summary judgment in favor of defendant American Tobacco on the grounds that the evidence before the court was "legally insufficient to support a finding that White's use of GDST caused" his medical problems. [ER 197] A grant of summary judgment is reviewed de novo. Federal Deposit Ins. Corp. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court applied the relevant law. Id.
 
 
 23
 In evaluating the cross-motions for summary judgment, the district court relied on the declarations of Dr. Smith and Dr. Harrison, both of whom opined that White's illnesses were not caused by his short-term use of GDST. White had submitted an affidavit stating his own belief that GDST had caused his problems.[6] Finding that White was not qualified to testify regarding causation and had "not identified or secured affidavits from anyone who is so qualified and who will testify in support," the court held as a matter of law that White could not establish a causal relationship between his use of GDST and his medical problems. [ER 199]
 
 
 24
 As a preliminary matter, we disagree with White's contention that the physicians' declarations were insufficient as a matter of law. The motion for summary judgment was governed by Fed.R.Civ.P. 56. Declarations made "under penalty of perjury" may be submitted in lieu of affidavits in federal courts. 28 U.S.C. § 1746. The Smith and Harrison declarations were both made under penalty of perjury, and hence were admissible. Moreover, the declarations conformed to Rule 56(e) in that they were based on personal knowledge, set forth facts which would be admissible into evidence, and demonstrated that the affiants were competent to testify to these matters. See Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir.1990) (noting that conformity with Rule 56 "may be inferred from the affidavits themselves").
 
 
 25
 We agree with the district court that summary judgment was appropriate. Dr. Smith opined that, given the slow growth of White's form of cancer and the prevalence of pseudomonas infection in institutional settings and in patients who have taken antibiotics, those illnesses could not have been caused by White's six-month use of GDST. Dr. Harrison, a treating physician whom White included on his original list of experts, declared that she did not believe that White's use of GDST "caused or was in any way related" to his illnesses and stated that she had never told White that there was any connection.[7]
 
 
 26
 The record contains no evidence that White had located any expert who would testify that GDST was the cause of his medical problems. White's list of experts stated only that the witnesses would "show possibly that the smoking of the [GDST] was directly related to plaintiff's serious injury." [ER 150-152] Moreover, White testified at his deposition that no doctor had told him that his use of the product was the direct and proximate cause of his cancer. [ER 113] White simply failed to identify any evidence which supported his claim of causation, or even created a material dispute. Without evidence of causation, White's common law claims could not succeed. As a matter of law, summary judgment in favor of defendant American Tobacco was appropriate. The decision of the district court must be affirmed.
 
 
 27
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 White has been a smoker since 1967. [ER 122] One of American Tobacco's experts, Dr. Frank E. Smith, opined that White actually developed cancer prior to his December 1986 exposure to GDST, although that cancer was not diagnosed until later. [ER 190] However, White did not seek recovery on the theory that his exposure to GDST aggravated his underlying medical condition; instead, White argued explicitly that he was "in good health and free of any infections [and] diseases and had not suffered any type of illness from smoking cigarettes made of commercially acceptable tobacco" prior to using GDST. [Blue Brief at 3]
 
 
 [2]
 The Clerk's Record for this action contains more than 250 documents in eight volumes, many of which were filed by White
 
 
 [3]
 White also contends that it was error for the district court to refuse to appoint an inmate law clerk. But even in the context of civil rights and habeas corpus actions, where there is a constitutional right of access to the courts, we have held that there is no entitlement to inmate assistance when an "adequate alternative" exists. Storseth v. Spellman, 654 F.2d 1349, 1352-53 (9th Cir.1981)
 
 
 [4]
 Under Fed.R.Evid. 706(a), "[a]n expert witness shall not be appointed by the court unless the witness consents to act."
 
 
 [5]
 While the form contains the general warning that "inmates plan escapes," it does not warn the physician, as White contends, that the specific "inmate plans escape." The consulting physician is asked to contact the prison medical authorities rather than discussing the consultation with the inmate, and is asked not to inform the inmate of the date and time of follow-up visits or hospitalizations. [See, e.g., ER 56]
 
 
 [6]
 White also submitted the affidavit of Dr. Richard L. Wagner, which described the diagnosis of White's cancer but did not contain any statements regarding causation. [ER 194-95]
 
 
 [7]
 Dr. Harrison also asserted that, despite the fact that White had listed her as an expert, White had never discussed the lawsuit with her