667 So.2d 1289 (1995)
Ella Mae Howard HORTON and Nathan Randall Horton, Widow and Son of Nathan Henry Horton, Deceased, Individually and on Behalf of All Wrongful Death Beneficiaries and the Estate of the Deceased
v.
The AMERICAN TOBACCO COMPANY and New Deal Tobacco and Candy Company, Inc.
No. 91-CA-00006-SCT.
Supreme Court of Mississippi.
November 9, 1995.
Rehearing Denied February 15, 1996.
Charles Victor McTeer, McTeer & Associates, Greenville, Don Barrett, Barrett Law Office, Lexington, Frederick B. Clark, Greenwood, Shirley Byers, Greenville, for appellant.
James E. Upshaw, Upshaw Williams Biggers Page & Kruger, Lonnie D. Bailey, Upshaw Williams Firm, Greenwood, Edward Blackmon, Blackmon Blackmon & Evans, Canton, Shelby D. Goza, Hickman Sumners Goza & Gore, Oxford, Calvin R. King, Anna Maria, FL, Thomas E. Bezanson, Chadbourne & Parke, New York City, Mary T. Yelenick, Chadbourne & Parke, New York City, for appellee.
En Banc.
BANKS, Justice, for the Court:
This matter deals with the liability vel non of a tobacco product manufacturer and distributors with respect to the cancer contracted by the plaintiffs' decedent. The matter went to a jury which rendered a verdict for the plaintiffs but assessed zero damages. The plaintiffs appeal that result and the defendants cross-appeal asserting an entitlement to a directed verdict in its favor. A majority of this Court concludes that the court erred in failing to instruct the jury that the "risk-utility" standard applies in determining liability and that the court erred in granting an assumption of the risk instruction. *1290 A plurality concludes that these errors are of no moment because, despite the assumption of the risk instruction and the failure to give the risk utility instruction, the jury found for the plaintiffs. We conclude that such a verdict is consistent with both the instructions given and the evidence. It evinces a finding that the product is unreasonably dangerous, that the decedent did not assume the risk, but that, upon application of our doctrine of comparative fault, no damages should be assessed against the defendant. Accordingly, a plurality would affirm the judgment of the circuit court rejecting both the plaintiffs' appeal and the defendants' cross-appeal. Joining the plurality as to result on the direct appeal are those who would reverse the trial court on defendant's cross-appeal on the basis of the view that a proper application of the law of products liability would render a directed verdict in favor of the defendant. Those who would reverse the judgment on the direct appeal on the basis that the errors in instructing the jury impermissibly affected its verdict, join the plurality in rejecting the cross-appeal. In sum, we affirm as to the direct appeal and as to the cross-appeal.

I.

a.
This is an appeal from a judgment entered on a jury verdict in the Circuit Court of Lafayette County. This action was commenced by the decedent, Nathan Henry Horton ("Horton"), on May 14, 1986, against the appellees/cross-appellants, the American Tobacco Company and New Deal Tobacco and Candy, Inc. ("the defendants"). Upon his death on January 27, 1987, his widow, Ella Mae Howard Horton, and his son, Nathan Randall Horton ("the plaintiffs"), were substituted as wrongful death beneficiaries. The plaintiffs filed their Fourth Amended Complaint on September 14, 1989. Prior to trial, the plaintiffs withdrew their implied warranty, failure-to-warn, and misrepresentations claims.
The trial began on September 4, 1990, in Oxford, Mississippi, with the plaintiffs pursuing two theories of tort liability: negligence and strict liability. Upon completion of the presentation of the plaintiffs' case-in-chief, the trial court granted, in part, the defendants' motion for a directed verdict, dismissing the plaintiffs' claims of negligence predicated on their "failure to test" and "contaminants" allegations. The court subsequently dismissed the plaintiffs' negligence claim in toto.
Following a three-week trial, the case was submitted to the jury on a strict liability theory, with instructions also given on assumption of the risk and comparative negligence. The jury returned a verdict in favor of the plaintiffs but awarded zero damages.

b.
Horton was born on July 7, 1936, in Holmes County, Mississippi. He began smoking Pall Mall unfiltered cigarettes in 1955. Prior to that, according to Horton's deposition testimony, he smoked cigarettes rolled with tobacco he obtained from cans of his father's Prince Albert tobacco. When he began buying his own cigarettes, Horton bought Pall Malls because they were long, unfiltered cigarettes that he felt gave him more for his money. Additionally, Horton testified that he considered Pall Malls to be "a good buy."
During the course of his deposition, Horton admitted that from childhood, he had been told that smoking was bad for him. He had been aware, over the years, of purported links between smoking and disease. Horton testified that he had been warned by many, many people of the dangers of smoking. Horton admitted that his doctor had told him not to smoke. Moreover, Horton had known specifically of the risk of cancer associated with smoking. Horton also admitted that he had heard others describe, and had himself referred to, cigarettes as "coffin sticks" and "cancer sticks" through the years.
Beginning in 1966, Horton was further warned of the reported risks of smoking by a warning label contained on each package of cigarettes he smoked. Horton acknowledged that he had heard about the Surgeon General's Report concerning smoking and lung cancer. He also admitted that he had read the federally-mandated warnings, and that he had been aware of the warnings for many *1291 years. Despite these repeated warnings, Nathan Horton continued smoking.
Horton sought medical help in the fall of 1985 for chest and arm pain. He was diagnosed as having mild emphysema in October of that year. In February, 1986, doctors at the Veteran's Administration Hospital in Jackson concluded that he had lung cancer. Horton died of pulmonary hemorrhage secondary to lung cancer on January 27, 1987.
At trial, the plaintiffs presented the testimony of several medical experts. These experts testified to the effects of cigarette smoking, the components of cigarettes and cigarette smoke, and the human carcinogens found in smoke. Dr. David Burns, the first expert called by the plaintiffs, testified that the 1964 Surgeon General's Report on smoking conclusively found that cigarette smoking caused lung cancer in men. He further testified that every Surgeon General's Report since that time had reached the same conclusion. Dr. Burns testified that 95-97% of all lung cancers occur in smokers. Additionally, Dr. Burns testified that the advertising efforts of the tobacco industry had caused a false sense of security in the general public and that the general public was not aware of the magnitude of the risk associated with smoking.
Dr. Heinz Ginzel testified that cigarette smoking is highly addictive and that the addictive component is nicotine. He further testified that not only is nicotine addictive, but that it also increases the risk of lung cancer. Additionally, Dr. Ginzel testified that tobacco smoke is the number one human carcinogen according to the International Agency for Research on Cancer. Finally, Dr. Ginzel testified that Horton was addicted to cigarettes.
The plaintiffs next introduced the video deposition of Robert K. Heimann, former president and chief executive officer of the American Tobacco Company. Heimann testified that he took the position that cigarettes are not injurious to health. He further testified that it was the American Tobacco Company's position from 1954-1980 that cigarettes were not injurious to health. Heimann testified that he and the American Tobacco Company were well aware of scientific reports that linked smoking to lung disease. Heimann even admitted that some of these reports were commissioned by the tobacco industry itself. Heimann also testified that the American Tobacco Company wanted the public to believe that cigarette smoking was not dangerous to their health and that they wanted the public smoking their brands of cigarettes. Finally, Heimann testified that Congress was wrong in requiring warnings on cigarettes. Moreover, Heimann stated that World Health Organization, the Canadian Ministry of National Health and Welfare, the American Medical Association, the American Heart Association, the American Cancer Society, the American College of Chest Physicians, the American Association for Thoracic Surgery, the American Public Health Association, the U.S. Veterans Administration, and the British Ministry of Health were all wrong in concluding that cigarettes are hazardous to the health of the general public.
Dr. Richard Pollay testified that during the 1950's when Horton began smoking, there was very little belief among the public that smoking caused lung disease. Dr. Pollay testified that the public is still largely unaware of the dangers associated with smoking. Dr. Kenneth Warner testified that cigarettes are unreasonably dangerous and are the only product that causes death if used exactly as intended.
The doctors that performed the autopsy on Horton, Dr. George Smith and Dr. Robert O'Neal, testified that smoking Pall Mall cigarettes was the cause of Horton's emphysema, lung cancer, and subsequent death.
Based on this evidence, the jury returned a verdict against the defendants and in favor of the plaintiffs but awarded zero damages. This appeal followed.

II.
Plaintiffs contend that this case should be reversed because the trial court instructed the jury in accordance with the "consumer expectations" rather than the "risk-utility" standard for products liability. It is clear that this Court has adopted the latter standard. *1292 Sperry-New Holland v. Prestage, 617 So.2d 248 (Miss. 1993). They also contend that the jury should have been allowed to consider whether the defendant was negligent in manufacturing and marketing the product.
The fact is, however, as strenuously urged by the plaintiffs, the jury found for the plaintiffs with respect to the question whether the product was unreasonably dangerous. It must have done so in order to have found for the plaintiffs as its verdict indicated. It follows that the failure to give a risk-utility instruction or a negligence instruction was harmless. Dunn v. Jack Walker's Audio Visual Ctr., 544 So.2d 829, 831 (Miss. 1989) ("[E]rrors in jury instructions are deemed, harmless, moot or immaterial ... [where] the jury verdict on the point at issue gave the appealing party the most favorable result he could have received had the trial court handled the point correctly.") See, Dicus v. Republic Paint and Varnish Works, 128 Miss. 189, 192, 90 So. 729, 730 (1922); Hoover Commercial Co. v. Humphrey, 107 Miss. 810, 820-21, 66 So. 214 (1914).
The most favorable result for the plaintiffs from a negligence or a risk-utility product liability instruction is a verdict for the plaintiffs as to liability. That is what they got. Their concern has to do with the assessment of damages which is not a function of the negligence or risk-utility liability instructions.

III.
This brings us to the question of the verdict. The jury was given a comparative fault instruction, over defendants' objection, telling it that if it found that cigarettes were unreasonably dangerous, and, if it further found that the plaintiff Horton negligently contributed to his injuries, then the jury should determine the percentage that each party's fault contributed to the injury and render a verdict for the plaintiff deducting the percentage of Horton's fault from any damages sustained. The jury was also given, over plaintiffs' objection, an "assumption of the risk" instruction. There the jury was told that if it found that Horton appreciated the risk of using cigarettes and voluntarily used cigarettes in violation of that risk, then the jury should find for the defendant American Tobacco Company.
Other than the comparative fault instruction, the jury was not given an instruction telling it what verdict it should render, if it found that Horton's conduct was the sole proximate cause of his injury. The court stated and plaintiff acknowledged during the colloquy concerning the instructions that should the jury find that Horton's fault should be attributed 100% on a comparative basis, then the plaintiffs would get nothing. While before now there has been no occasion for this Court to consider such an occurrence, it is both conceptually and legally sound. See Byrd v. Matthews, 571 So.2d 258, 261 (Miss. 1990) (Sullivan, J., dissenting, joined by Hawkins, P.J.) ("The trial court could have ... allowed a jury to award Byrd $0 damages applying the doctrine of comparative negligence... ."); Munn v. Algee, 730 F. Supp. 21 (N.D.Miss. 1990); (Approving verdict of $0 rendered on comparative negligence special interrogatory allowing the jury to find 100% causation in the plaintiff's subsequent acts even though the jury answered "yes" to the question whether the original negligence was still at work.); Hayes v. McFarland, 535 So.2d 568 (La. Ct. App. 1988) (Upholding a jury verdict finding plaintiff the sole proximate cause of the injury in dog bite case where defendant was strictly liable under Louisiana statute and comparative negligence applied.); Akins v. Glens Falls City Sch. Dist., 75 A.D.2d 239, 429 N.Y.S.2d 467, 469 (1980), rev'd on other grounds, 53 N.Y.2d 325, 441 N.Y.S.2d 644, 424 N.E.2d 531 (1981) (Herlihy, Justice, concurring.) ("[T]he defendant still can completely avoid damages by proving that upon comparison the contributory negligence or assumption of risk proportionately reduces damages to zero." (Emphasis in original.)); Clements v. Blue Cross of Washington & Alaska, Inc., 37 Wash. App. 544, 682 P.2d 942, 945 (1984) ("[A] plaintiff's negligence may reduce the amount of damages, perhaps even to nothing in an appropriate case... .").
The jury appears to have done just that  found that Horton's negligence was 100% responsible for his damages. The plaintiff *1293 argues that in doing so the jury found that the product was unreasonably dangerous and that the plaintiff died as a result of smoking the product in question. Plaintiff now complains, however, that American is not entitled to claim negligence because its position at trial was that it was not negligent to smoke cigarettes. The argument is not well taken. The question is not what position the defendant took, but whether the verdict was responsive to the instructions and evidence. The evidence was that the plaintiff, Horton, was aware that smoking was dangerous; that cigarettes were referred to by him and others as "cancer sticks"; and, that there was a warning label on the cigarettes at a time when, if he had quit, evidence would support a conclusion that he would not have developed cancer from smoking.
While Horton's actions in continuing to smoke might be characterized as evidence supporting a conclusion of assumption of the risk, that doctrine is subsumed in our comparative fault doctrine. Miss. Code Ann. 1972 § 11-7-15; See, McDaniel v. Ritter, 556 So.2d 303, 319 (Miss. 1989) (Sullivan, J., concurring); Hill v. Dunaway, 487 So.2d 807, 810 n. 1 (Miss. 1986). Both parties recognize that the plaintiffs' decedent's own actions must be given some role in attributing damages to relative fault. Whether the context is an "open and obvious" hazard or assumption of a known risk we have tended to rely upon comparative fault principles. See Tharp v. Bunge Corporation, 641 So.2d 20, 25 (Miss. 1994) (Comparative fault applies where an unreasonably dangerous condition is open and obvious); See also Newman v. Missouri Pac. R. Co., 421 F. Supp. 488 (S.D.Miss. 1976) aff'd in part and rev'd in part on other grounds, 545 F.2d 439, reh. den., 551 F.2d 863 (5th Cir.1977) (Discussing the application of our comparative fault doctrine in the context of "last clear chance".). The conduct relied upon by the defendant to assert assumption of the risk is the same conduct upon which the jury could rely in finding negligence. Hill v. Dunaway, 487 So.2d at 810.
If the verdict is to be defeated, then it must be based on the conclusion that the jury assessment of fault is against the overwhelming weight of the credible evidence evincing, bias and prejudice on the part of the jury. Bass v. Montgomery, 515 So.2d 1172, 1175 (Miss. 1987). The trial court found that the jury verdict was responsive to the instructions and the evidence and was not the product of bias or prejudice. There is nothing in this record which suggests that the finding was an abuse of discretion. Id.
It follows that as to plaintiffs' direct appeal the judgment of the circuit court must be affirmed.

IV.
Defendants contend on cross-appeal that they were entitled to a directed verdict. A majority of this Court would reject that claim on the merits for the reasons stated in the separate opinion of Presiding Justice Lee. Moreover, as a result of the verdict rendered no judgment was rendered against defendants. We affirm that judgment. It follows that their claim is moot as they are entitled to no relief.
For the foregoing reasons the judgment of the circuit court is affirmed.
AFFIRMED ON DIRECT AND CROSS-APPEAL.
JAMES L. ROBERTS, J., concurs in result only.
HAWKINS, C.J., concurs in part and dissents in part with separate written opinion joined by PRATHER, P.J., and SMITH, J.
DAN M. LEE, P.J., concurs in part and dissents in part with separate written opinion joined by SULLIVAN, PITTMAN and McRAE, JJ.
BANKS, J., joins this opinion in part.
McRAE, J., concurs in part and dissents in part with separate written opinion joined in part by DAN M. LEE, P.J.
HAWKINS, Chief Justice, concurring in part and dissenting in part:
I readily concur in the result reached by the plurality opinion, but I disagree with its reasoning. I would reverse and render judgment here for The American Tobacco Company *1294 and New Deal Tobacco and Candy Co., Inc., on their cross-appeal, because under settled law there is no strict liability, and the circuit court erred in submitting the issue to the jury.
In deference, I cannot agree with the plurality opinion that the issue raised under the cross-appeal is moot. Majority Op., p. 1293. This lawsuit first and foremost is to answer the question whether there is any products liability on the part of the cross-appellants American Tobacco and New Deal Tobacco, and there should not be any finessing of the issue. While it might ordinarily be correct that affirming a direct appeal obviates the necessity of addressing a cross-appeal in cases that properly were submitted to a jury, in this case the first and foremost question is whether in this case there was any products liability on the part of the defendants at all. The plurality places the cart before the horse. Should the case have been submitted to any jury for decision, or were the defendants and cross-appellants entitled to a directed verdict is the question we are required to address.
Knowing the ravages of cancer upon any person, one cannot help being saddened by the suffering of the decedent, Nathan Henry Horton. It is a horrible disease. Yet, as Mr. Horton himself would have been the first to acknowledge, in each of the several thousand times he put a cigarette to his mouth and lit it in the last 20 years of his lifetime, he actually knew he did so at his own peril.
Attaching any liability to the defendants under the facts of this case makes all the intelligence of a man buying himself a.38 caliber revolver, loading it, taking it home and into his bathroom, sticking the muzzle to his temple, cocking it, pulling the trigger and blowing his brains out, and then his bereaved widow and children suing Smith & Wesson and the local Western Auto store for products liability.
The only difference between the hypothetical example I just gave and smoking cigarettes is the time it takes to get the job done. A Smith & Wesson pistol is designed to kill. So are cigarettes, yet it is lawful to sell them both under Mississippi and Federal law.
Continuing down the path of the plurality's logic, Smith & Wesson could have engraved on the handle of every pistol it manufactured: "Warning! If you load this firearm and stick it to your head and pull the trigger, it will be dangerous to your health," and still Smith & Wesson would be subject to products liability.
Indeed, under this impeccable logic there is even more reason to hold Smith & Wesson liable, because it is generally considered that the person who commits suicide is, for the time being at least, somewhat irrational. The man or woman who smokes cigarettes is considered to have good sense (usually).

LAW
Cigarettes are a product manufactured and put into the stream of commerce by multi-national corporations, but beyond this the analogy between cigarettes and other manufactured products ends under a strict liability analysis.
Cigarettes are not tools, machines or products used to make a living or furnish life's necessities or comforts. They are not a medicine to cure an illness, or relieve symptoms of disease. No doctor would ever prescribe or recommend that his patient take up the cigarette habit. They are consumed solely for pleasure by the consumer.
Thus, I find it strange that both the plurality and the dissent cite Sperry-New Holland v. Prestage, 617 So.2d 248 (Miss. 1993), which in fact mandates a finding of no liability in this case. First, every smoker flunks the "risk utility" test we recently adopted in Sperry-New Holland v. Prestage, dealing with injuries from use of a farm tractor.
In a "risk utility" analysis, a product is "unreasonably dangerous" if a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product. Thus, even if a plaintiff appreciates the danger of a product, he can still recover for any injury resulting from that danger provided that the utility of the product is outweighed by the danger that the product creates. Under the "risk utility" test, either the judge *1295 or the jury can balance the utility and danger-in-fact, or risk, of the product.

Id. at 254.
What reasonable person could escape concluding that the risk, the dangers in smoking, far outweigh any utility, any possible benefit? There is no more usefulness in smoking than there is in gambling or drinking whiskey. There is more reason to award a gambler who lost at a casino, or a man who drinks too much and injures himself recovery in a strict liability suit than a smoker. In the latter instances they don't get the warning cigarette smokers do.[1]
Just as clearly Horton flunks the "consumer expectations" test we edged away from in Sperry-New Holland. To claim a "defective condition," it must be "a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him... . In other words, if the plaintiff, applying the knowledge of an ordinary consumer, sees a danger and can appreciate that danger, then he cannot recover for any injury resulting from that appreciated danger." Id. at 254. Is there in existence any cigarette smoker who can possibly be unaware of the serious health hazards in smoking? Besides this, in Sperry-New Holland we were careful to stay within the confines of products liability principles, again quoting in full section 402A of the American Law Institute's Restatement of Torts (Second), and holding, "Section 402A is still the law in Mississippi." Id. And, Section 402A specifically states there can be no products liability based upon smoking.
How convenient for the plurality and the dissent to ignore the comment to Section 402A:
I. Unreasonably dangerous. The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. Ordinary sugar is a deadly poison to diabetics, and castor oil found use under Mussolini as an instrument of torture. That is not what is meant by "unreasonably dangerous" in this Section. The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous. Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous. Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous. (Emphasis added.)
There is nothing in Sperry-New Holland which remotely suggests recovery under the facts of this case. To the contrary, Sperry-New Holland mandates reversal and today's decision flies in the face of Sperry-New Holland. There is simply zero basis under well settled principles of products liability law to hold these defendants liable under the facts of this case.
The authorities from other jurisdictions are unanimous thus far in holding no products liability exists in a case such as this. Cipollone v. Liggett Group, Inc., 505 U.S. *1296 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); White v. American Tobacco, No. 91-16911, 1993 WL 133829, 1993 U.S.App. LEXIS 9902 (9th Cir. filed Apr. 28, 1993); Bentz v. Eagle Tobacco Prod., No. 93-1183-FR, 1993 WL 430549, 1993 U.S.Dist. LEXIS 14928 (D.Or. Oct. 21, 1993); Paugh v. R.J. Reynolds Tobacco Co., 834 F. Supp. 228 (N.D.Ohio 1993); Herndon v. Brown and Williamson Tobacco Corp., No. 1:92:CV:166, 1993 WL 475530, 1993 U.S.Dist. LEXIS 8687 (W.D.Mich. Apr. 9, 1993); Butler v. R.J. Reynolds Tobacco Co., 815 F. Supp. 982 (S.D.Miss. 1993).
What the authorities say is quite simple: when a person buys a product which it is perfectly legal to sell, and which he knows is designed to do certain things, he cannot hold the seller liable for the product injuring him because it did precisely what it was designed to do.
What the majority fails to recognize is the basic fundamental philosophy implicit in every court decision rejecting a products liability claim by a smoker: freedom cannot exist without the baggage of responsibility any more than water can exist without being wet.
Freedom is a precious commodity, but to have it you must accept responsibility for your decision.
That philosophy is basic to all law in a free society, for Nature itself never forgives mistakes. Every creature receives the benefits or pays the consequences for the action or inaction it takes.
The law in this great nation has to say to every grown person, "You are an adult and you have an absolute, inalienable right to make certain choices and decisions. But, having without fraud, concealment or trickery made a deliberate choice, you cannot hold any other person liable for the consequences of your own decision, if what that person did was perfectly legal."

ASSUMPTION OF RISK?
For some reason not apparent to me, the plurality talks about assumption of the risk in a negligence context in this products liability case. This is not a case of negligence on the part of the defendants or Horton. The defendants clearly intended to manufacture the cigarettes precisely as they were sold. Their liability must be predicated upon products liability law, namely it was defective and unreasonably dangerous, and not negligence. Just as clearly, Horton's conduct was not negligent, but deliberate, well thought out and continuing over a period of years. Yet even if somehow this were a case based upon negligence on the part of the defendants, they clearly should be permitted to assert assumption of the risk as a complete defense.[2]
Indeed, the plurality concedes Horton's conduct could be characterized as evidence "supporting a conclusion of assumption of the risk," but incorrectly holds that the "doctrine is subsumed in our comparative fault doctrine." McDaniel v. Ritter, 556 So.2d 303, 319 (Miss. 1989), cited by the plurality in support of this holding does no such thing, but clearly recognizes the assumption of the risk doctrine, and explains the difference between conduct assuming the risk and conduct which is contributory negligence. Hill v. Dunaway, 487 So.2d 807 (Miss. 1986), the only other case cited by the plurality which deals with the question of assumption of the risk, also recognizes that the defense of assumption of risk is alive in Mississippi. We did note therein that there was an overlap between the two. So what? It is plain in this case that Horton was not "negligent." He was well aware of the dangers inherent in smoking, knew all about them. He deliberately chose to continue smoking.

* * * * * *
It is patent that these defendants are not liable under the facts of this case under any principle of negligence[3] or products liability *1297 law. Indeed, it is either naive or cynical to pretend they are. The plurality and dissent have decided, however, that the tobacco companies are doing something that, while perfectly legal under State and Federal law, is harmful to consumers. Therefore, they have simply adopted a rule of law that every manufacturer or seller of tobacco is legally liable to any person who has ever used the product; all that remains is the damages to be assessed. There is a total absence of any legal precedent for this holding; the Mississippi Supreme Court simply believes this is good law.

WHEN ALL IS SAID AND DONE
The Legislature in 1993 saw fit to enact Miss. Code Ann. § 11-1-63 (Supp. 1995) setting forth the conditions under which a manufacturer could be held liable in a products liability action. This statute renders the majority's views on products liability an exercise in semantics, because all future tobacco cases based purely and simply on products liability law will be governed by Miss. Code Ann. § 11-1-63, not the majority's common law interpretation of products liability law. If this action had been brought following enactment of Miss. Code Ann. § 11-1-63, it would be subject to dismissal under a Rule 12(b) motion, or at best by summary judgment.
A perusal of Miss. Code Ann. § 11-1-63 reveals it to be essentially a codification by the Legislature of the criteria of § 402A Restatement. If we followed § 402A in this case, as we have previously avowed, it would perform the salutary purpose of demonstrating to the Legislature and people of Mississippi that enactment of Miss. Code Ann. § 11-1-63 was superfluous, that this Court could be relied upon to follow well-settled principles of products liability law without nudging from the Legislative branch. I apprehend the majority's hold will be viewed by many as another example of a need to curb this Court's holdings.[4]
It is an irony of the times that the Legislature, which has the responsibility of expressing the will of the people at large, saw fit to enact Miss. Code Ann. § 11-1-63. In the past Legislative enactments have come about to relieve hardships imposed upon the average person seeking legal redress. For example, Miss. Code Ann. § 11-7-15,  17 (1972), first enacted as Chapter 135, Laws of 1910, providing that contributory negligence did not bar recovery, was to relieve the harshness of the common law rule that contributory negligence of the plaintiff was a bar to recovery in any negligence action. And, Miss. Code Ann. § 11-7-19, first enacted by the Legislature as Chapter 156, Laws of 1914, as shown in footnote 1, supra, was to relieve the harshness of the common law defense of assumption of risk in employment related injuries. See also § 193, Miss. Const., Miss. Code Ann. § 77-9-439. In enacting Miss. Code Ann. § 11-1-63, the Legislature assumed for the reverse role, namely: to inhibit what it deems as judicial largess.
There can be little doubt that products liability law and awarding punitive damages in proper cases have been of immeasurable benefit to society and the average citizen confronted with defective products manufactured by immensely wealthy, multi-national corporations, and abuses by insurance companies. Bankers Life & Cas. Co. v. Crenshaw, 483 So.2d 254, 276 (Miss. 1985) ("Conduct of an insurance company not authorized by law which carries with it a potentiality of great harm to the insurance public is an outrage, and should be condemned. Punitive damages in such a case is an appropriate, and perhaps the only remedy."); State Stove Mfg. Co. v. Hodges, 189 So.2d 113, 120 (Miss. 1966), quoting Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897, 900-01 (Cal. 1963) ("The *1298 purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves."). They need preserving, and they would be best preserved, at least in my humble judgment, by conservative husbandry on the part of the judiciary. When an appellate court ignores significant pertinent facts, or settled principles of law, or both, to affirm dubious products liability cases, it may give relief to a particular plaintiff or his counsel, but it is a pyrrhic victory, insofar as the bar and future litigants are concerned. Such a holding only invites action by the State Legislature or United States Congress to curb what are deemed as judicial excesses. Well reasoned, fair decisions by court can always be ably defended in the halls of a Legislature or the Congress. Others cannot.
I would reverse and render on the cross-appeal, which would obviate addressing the direct appeal.
PRATHER, P.J., and SMITH, J., join this opinion.
DAN M. LEE, Presiding Justice, concurring in part and dissenting in part:
I join Justice Banks' opinion insofar as it rejects American's cross-appeal and recognizes that cigarettes are a "product" subject to "risk-utility" analysis in strict liability actions. However, the jury's award of zero damages after finding for the Horton heirs is erroneous and, therefore, this case should be remanded to the trial court for a determination of damages.

I.
At trial, Horton sought a jury instruction which would have allowed the jury to use risk-utility analysis to determine if American's cigarettes were a defective, unreasonably dangerous product. The trial judge refused to submit Horton's instruction, and on appeal, Horton assigned as error:
Whether the trial court erred in failing to submit to the jury the concept of risk/utility to define whether Pall Mall cigarettes were a defective, unreasonably dangerous product.
Conversely, American argues that the trial court should not have allowed Horton to pursue a claim for strict liability because of the open and obvious risks associated with cigarette smoking and because Horton did not put forth any evidence of any product defect in the Pall Mall cigarettes Horton smoked. In its cross-appeal, American Tobacco assigns as error:
Whether the trial court erred in permitting plaintiffs to pursue a claim for strict liability, where the reported risks associated with smoking have long been a matter of common knowledge in the community, and where plaintiffs failed to put forth evidence of any product "defect" in the "Pall Mall" cigarettes smoked by plaintiffs' decedent Nathan Horton.
Our commitment to stare decisis precludes disposition of this appeal without following, or at least acknowledging, our previous cases on point. Accordingly, Horton's appeal and American's cross-appeal is controlled by Seymour v. Brunswick Corporation, Mercury Marine Division, 655 So.2d 892 (Miss. 1995); Sperry-New Holland v. Prestage, 617 So.2d 248, 253 (Miss. 1993); Whittley v. City of Meridian, 530 So.2d 1341 (Miss. 1988) and Hall v. Mississippi Chemical Exp. Inc., 528 So.2d 796 (Miss. 1988).
In 1993, this Court, in a well reasoned opinion, reiterated our adoption of risk-utility analysis in strict liability cases. That pronouncement stated:
We today apply a "risk-utility" analysis as adopted in Whittley v. City of Meridian, 530 So.2d 1341 (Miss. 1988) and Hall v. Mississippi Chemical Exp. Inc., 528 So.2d 796 (Miss. 1987) [sic] and write to clarify our reasons for the adoption of that test.
Sperry-New Holland v. Prestage, 617 So.2d 248, 253 (Miss. 1993). Our decision to adopt risk-utility analysis evolved through our case law after careful consideration of Mississippi law. In Prestage, we determined that risk-utility analysis best protects the manufacturer and the consumer in strict liability cases. Id. at 256.
*1299 Our departure from "consumer expectations" analysis began with Hall v. Mississippi Chemical Exp. Inc., 528 So.2d 796 (Miss. 1988). In Hall, this Court moved away from "consumer expectations" analysis in products liability cases. Hall, like all of the products liability cases before it, followed Restatement (Second) of Torts, § 402A as the basis of Mississippi's law for strict liability. Nevertheless, this Court then stated:

The proper focus in a strict liability case is upon the utility and safety of the product in view of its intended function rather than on the manufacturer's fault or lack thereof. (emphasis added).
Id. at 799.
We next referred to risk-utility analysis in Whittley v. City of Meridian, 530 So.2d 1341 (Miss. 1988). In Whittley, as in Hall, this Court acknowledged § 402A as the law for products liability in Mississippi and then stated:

In determining whether a product is unreasonably dangerous a reasonable person must conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product. This is a question for the finder of fact. (emphasis added).
Id. at 1347.
This Court's recent decision in Seymour v. Brunswick Corporation, Mercury Marine Division, 655 So.2d 892 (Miss. 1995), should put to rest any doubt that risk-utility analysis in strict liability cases was the law in Mississippi at the time the case sub judice was tried. In Seymour, this Court recognized that our adherence to risk-utility analysis began with our opinions in Whittley and Hall. Seymour, 655 So.2d at 895. Clearly, risk-utility analysis has been the law in Mississippi since our decisions in Hall and Whittley.
In Hall, this Court rejected the plaintiff's claim that the manufacturer of a Mack truck was strictly liable for failing to include an emergency shutdown device on its trucks. The plaintiff, a worker at a petroleum refinery, was seriously injured in a fire at the refinery where he worked. The plaintiff alleged that the fire that injured him was caused when hydrocarbons escaped from the plant and came into contact with the exhaust pipe of a Mack truck that was unloading its cargo. Hall, 528 So.2d at 797. This Court rejected Hall's argument that the Mack truck was defective because he did not show that it was not reasonably fit for its intended use, nor did he show that the truck was unreasonably dangerous without the automatic air shutdown device. Id. at 799. To the contrary, the credible evidence showed that the truck was perfectly safe and useful for its intended function without such a device. Id.
In Whittley, the plaintiff appealed from a directed verdict granted to the manufacturer of a defectively designed side-slant refuse bin. Whittley was rendered a quadriplegic when a side-slanted refuse bin she was playing on or near fell on her. Whittley, 530 So.2d at 1343. Whittley's claim against the manufacturer was based upon strict liability. On appeal, we reversed the trial court's grant of a directed verdict to the manufacturer and held that Whittley put on evidence to show that the refuse bin was not stable and thus, was manufactured in a defective condition. Id. at 1347.
In Prestage, the plaintiff was injured by a combine that was defectively designed. Although the combine was defectively designed, it was not always unsafe to operate. The jury, through risk-utility analysis, determined that the utility of the defectively designed combine was outweighed by the risk of harm the user was subjected to by using the defectively designed combine. The jury determined that Sperry-New Holland defectively designed its combine, and returned a verdict for Prestage. This Court affirmed the jury's verdict.
In the case sub judice, American argues that the plaintiffs are precluded from bringing their strict liability suit because of: (1) the long reported risks associated with smoking and; (2) the plaintiffs failed to establish any product "defect" in the cigarettes smoked by Horton. The fallacy of this argument is made clear when we apply risk-utility analysis under Mississippi products liability law. Seymour, 655 So.2d at 895; Prestage, 617 So.2d at 253; Whittley, 530 So.2d at 1347; Hall, 528 So.2d at 799.
*1300 American concludes that because of the open and obvious dangers associated with the use of cigarettes, Horton is barred from recovering. In Prestage, this Court specifically rejected the "open and obvious" defense as a bar to recovery. In fact, we stated the following:

Having here reiterated this Court's adoption of a "risk-utility" analysis for products liability cases, we hold, necessarily, that the "patent danger" bar is no longer applicable in Mississippi. Under a risk-utility analysis, the "patent danger" rule does not apply. In "risk-utility," the openness and obviousness of a product's design is simply a factor to consider in determining whether a product is unreasonably dangerous. Wade, 44 Miss.L.J. 837-838; W. Keeton, D. Dobbs, R. Keeton, and D. Owen, Prosser and Keeton on the Law of Torts § 99 at 698-99 (5th ed. 1984). (emphasis added).
Sperry-New Holland v. Prestage, 617 So.2d 248, 256 (Miss. 1993).
Clearly, the "open and obvious" defense is no longer an absolute bar to the plaintiffs' recovery in this case or any other products liability case. Horton's knowledge of the known dangers associated with cigarette smoking was but one factor to be considered by the jury when determining Horton's damages. Prestage, 617 So.2d at 256.
Likewise, this Court recently abolished the "open and obvious" defense as a bar to recovery in negligence actions. Tharp v. Bunge Corporation, 641 So.2d 20, 25 (Miss. 1994). In Tharp, this Court stated:
We now abolish the so-called "open and obvious" defense and apply our true comparative negligence doctrine. The jury found that there was negligence in the case at hand; the trial judge erred in construing the open and obvious defense as a complete bar when it really is only a mitigation of damages on a comparative negligence basis ...
Tharp, 641 So.2d at 25.
As discussed in Prestage and Tharp, the open and obvious defense is no longer a bar to recovery in Mississippi strict liability cases or negligence cases. See also Downs v. Choo, 656 So.2d 84 (Miss. 1995); Baptiste v. Jitney Jungle Stores of America, Inc., 651 So.2d 1063 (Miss. 1995); Tate v. Southern Jitney Jungle Co., 650 So.2d 1347 (Miss. 1995). Accordingly, even if Horton knew of the dangers associated with cigarette use, the "open and obvious" defense wielded by American is not an absolute bar to Horton's recovery.
American also contends that Horton failed to establish any product defect in cigarettes. We disagree. In the case at bar, testimony was received from a host of experts. These experts testified that, although the average consumer is somewhat aware of the health risks associated with smoking, the average consumer in no way understands the magnitude of the risk. Dr. David Burns, a medical expert for the plaintiffs, testified:
The major reason for having a press conference is that the Public Health Service is extremely concerned about the lack of knowledge and the lack of understanding of the magnitude of the health risks the general public entails when they smoke cigarettes. People have a general perception that smoking is hazardous in a nebulous kind of way, have the presumption, however, that it can't be very hazardous or we would not allow it to be sold.
And the Public Health Service is working very hard and as part of that effort releases the Surgeon General's report through a press conference as a means of increasing the awareness of cigarette smokers in the United States of the magnitude of the risk that they undertake when they smoke cigarettes.
That risk is widely distributed across a bunch of different diseases, and the sum total of that risk is that 40 percent of the people who smoke cigarettes will die prematurely because they smoke cigarettes. And that piece of information is not understood by the general public, and the purpose of the press conference is to present that as clearly and as unambiguously as possible to the general public.
(emphasis added).
Additionally, Dr. Heinz Ginzel, another medical expert for the plaintiffs, testified that according to the International Agency for *1301 Research on Cancer, the number one human carcinogen is tobacco smoke. Additionally, Dr. Ginzel testified that cigarette smoke is comprised of over 4,700 different substances, including nicotine, carbon monoxide, several cilia-toxins (substances which paralyze the cilia in the lungs), formaldehyde, acetaldehyde, ammonia, sulphur dioxide, hydrogen cyanide, and methyl isocyanate. (Dr. Ginzel testified that methyl isocyanate was the poison that killed over 2,000 people in the Bhopal, India, disaster.) Additionally, there was considerable evidence that cigarettes cause both mental and physical addiction. Clearly, evidence of a defect was presented.
In the case sub judice, the plaintiffs demonstrated that cigarettes are not reasonably safe for their intended use; i.e., human consumption. Hall, supra. Horton demonstrated that the manufacturers of cigarettes increased the nicotine to make the cigarettes more addictive and also added contaminates which are known human carcinogens. Horton used the cigarettes as they were intended, and as a result of a defect in the design, he was injured. Clearly, the jury determined that, even when used correctly, cigarettes are unreasonably dangerous and cannot be used in a safe manner. For the sake of strict liability law analysis, there is no reason to distinguish between a defectively designed combine that can be used safely on some occasions and a defectively designed cigarette that cannot be used safely on any occasion. Accordingly, this Court will apply risk-utility analysis in product liability cases involving cigarettes as we do in all other product liability cases.

II.
In the case sub judice, in addition to the above discussed assignment of error, Horton alleged the following as error:
I. Whether Appellants are entitled to an additur or a new trial on damages to correct a $0 damage verdict where a jury found the Pall Mall cigarettes smoked by Appellant's decedent, Nathan Horton, were defective unreasonably dangerous and the proximate cause of decedent's injury upon receipt of instructions couched in comparative negligence, the consumer expectations test of strict liability and assumption of risk.
II. Whether the jury verdict of $0 was responsive to the Court's instructions where: (1) the jury found the danger from smoking Pall Malls was actually greater then generally contemplated by the ordinary, average consumer; (2) the manufacturer claimed that Mr. Horton was not negligent in his use of their cigarettes; (3) actual damages of $420,782.10 and the testimony of Mr. Horton's pain, suffering and mental anguish were largely uncontested; and, (4) the assumption of risk defense was rejected by the jury.
The plaintiffs contend that they should have been awarded additur or, in the alternative, a new trial on the issue of damages alone. The plaintiffs base this claim on the inconsistent verdict returned by the jury. In light of the instructions given, the plaintiffs contend that three facts were conclusively proven:
1. The first fact established is that the Pall Mall cigarettes smoked by Nathan Horton were a defective and unreasonably dangerous product. A finding to the contrary, under jury instruction C-2 [the consumer expectation theory instruction] ... would have necessitated a general verdict for the defendants.
2. A second fact conclusively established by the verdict is that these defective and unreasonably dangerous Pall Mall cigarettes were a proximate cause of Nathan Horton's death. Again, a finding to the contrary would have necessitated a jury verdict for the defendants, under jury instruction P-1 [strict liability].
3. The third fact conclusively established by the jury verdict was that Nathan Horton did not assume the risk of smoking Pall Mall cigarettes. Again, a finding to the contrary would have mandated a verdict for the defendants, *1302 under jury instruction D-27(a) [assumption of the risk].
Reply Brief of Appellant/cross-appellee at 1.
In the case sub judice, the trial judge permitted the jury to decide only the plaintiffs' strict liability claim, dismissing the negligence claim. The jury was instructed to decide this issue by application of the consumer expectation theory of products liability. The jury was also instructed on the doctrines of comparative negligence and assumption of the risk. The instructions granted on these various issues are as follows:
Strict Liability
Instruction C-2
Plaintiffs' theory of recovery in this case is that the defendants are strictly liable to them.
Under the law of strict liability, if a manufacturer designs, manufactures, and sells a product in a "defective condition unreasonably dangerous," it is strictly liable to a user of its product if:
(a) the manufacturer is engaged in the business of selling such products;
(b) the product is expected to and does reach the user without substantial change in the condition in which it was sold; and
(c) the user of the product is injured by the product while using it in the manner in which it was intended to be used.
In order to recover under a strict liability theory, plaintiffs must prove by a preponderance of the evidence each of the following elements of their claim:
1. That the "Pall Mall" unfiltered cigarettes smoked by Nathan Horton were "defective" and "unreasonably dangerous";
2. That the alleged "defective" and "unreasonably dangerous" condition was a proximate cause of Nathan Horton's alleged cancer and death; and
3. That plaintiffs sustained damages as a result.
The burden of proof with respect to each element of plaintiffs' strict liability claim remains at all times on the plaintiffs.
You are instructed that the word "defective" as used in this rule of law means that the product has something wrong with it, so that it does not meet the reasonable expectations of the ordinary consumer or user as to its safety.
A product is in a "defective condition unreasonably dangerous" to the user when it is more dangerous than would be contemplated by the ordinary user or consumer with the ordinary knowledge common to the foreseeable class of users as to its characteristics. A product is not "defective" or "unreasonably dangerous" merely because it is possible to be injured while using this product.

Instruction P-1
If you believe from a preponderance of the evidence in this case that the danger of contracting lung cancer and emphysema by smoking Pall Mall cigarettes was actually greater than was generally contemplated by the ordinary consumer with knowledge common to the community during the years that Nathan Horton smoked Pall Mall cigarettes, then in that event Pall Mall cigarettes are a "defective and unreasonably dangerous" product.
And, if you further believe by a preponderance of the evidence that Nathan Horton contracted lung cancer and/or emphysema and died as a consequence of smoking Pall Mall cigarettes, then in that event your verdict herein should be for Plaintiffs against both Defendants.
The Plaintiff does not have to prove that smoking Pall Mall cigarettes was the sole or only cause of his lung cancer and emphysema, but only need prove by a preponderance of the evidence that smoking Pall Malls proximately caused the disease.

Comparative Negligence

Instruction P-12
Mississippi has a law known as comparative negligence, or comparative fault, which recognized that two or more parties may be negligent in causing an injury.
*1303 Comparative negligence, if any, on the part of the Plaintiff does not bar recovery by the Plaintiff against Defendants, but the total amount of damage to which the Plaintiff would otherwise be entitled shall be reduced by the percentage that Plaintiff's comparative fault contributed to his injury.
Accordingly, if you believe from a preponderance of the evidence in this case that Nathan Horton was negligent to some extent in smoking Pall Mall cigarettes during his lifetime, but also believe that Pall Mall cigarettes were a defective and unreasonably dangerous product, and that as a result of smoking Pall Mall cigarettes, Nathan Horton died from lung cancer and/or emphysema, then you should still return a verdict for the Plaintiffs. In such event, however, you should reduce the actual or compensatory damages that you would otherwise award the plaintiffs by the degree or proportion of the negligence of Nathan Horton, if any, which you believe caused or contributed to his death.
In other words, you may return a verdict for the Plaintiffs for that amount of money which you believe represents the proportional responsibility, if any, as between Nathan Horton personally, and the defendants, The American Tobacco Company, or New Deal, as each contributed to Nathan Horton's lung cancer, emphysema, and death.
Any award of punitive damages, however, against The American Tobacco Company in accordance with the other instructions of the Court, should not be reduced to any extent by the comparative negligence, if any, of Nathan Horton.

Assumption of the Risk

Instruction D-27(a)
Under the law one who, with knowledge and appreciation of a risk of injury, voluntarily chooses to engage in conduct which may pose such a risk is held to have assumed the risk of injury from his conduct and, if injured, cannot recover damages for the injury.
If you find from a preponderance of the evidence in this case that Nathan Horton:
(1) knew and appreciated the risk of contracting lung cancer and dying from smoking cigarettes; and that he
(2) voluntarily and deliberately chose to smoke cigarettes notwithstanding his awareness of those risks, then you must find that Nathan Horton assumed the risk of contracting lung cancer and dying from smoking cigarettes and your verdict must be for the Defendants, the American Tobacco Company and New Deal Tobacco and Candy Company, Inc.
The plaintiffs claim that when reading the instructions as a whole, as required, it is clear that the jurors found the defendants liable since the cigarettes were in fact more dangerous than could be reasonably contemplated by the average consumer. Additionally, the plaintiffs, based on the theory that assumption of the risk is merely a way to hold that a plaintiff was the sole cause of his own negligence, urge this Court to reach the conclusion that the verdict rejected assumption of the risk and, therefore, hold that Horton was not the sole proximate cause of his own death. This theory is premised on the belief that, in rejecting assumption of the risk, the jury found that Horton was not the sole proximate cause of his own death; logically, it follows that, since Horton was not the sole proximate cause of his own death, the defendants must have been at least partially responsible for Horton's death and thus, contributorily negligent. Therefore, the plaintiffs claim that the jury's award of zero damages is unresponsive and contrary to the instructions given, and urge this Court to grant them additur or, in the alternative, a new trial, on the issue of damages alone. I agree with the plaintiffs' position and would grant a new trial on the issue of damages alone.
The position taken by the plaintiffs in this case requires examination of the difficult question of whether the doctrines of assumption of risk and comparative negligence remain separate and viable theories. This Court has wrestled with this question on several occasions over the last twenty years. One of the first cases to address this issue extensively was Braswell v. Economy Supply *1304 Company, 281 So.2d 669 (Miss. 1973). In Braswell, the appellant, an experienced businessman, entered a lumber bin to inspect some lumber he was considering buying. While inside the bin, lumber fell on and seriously injured the appellant. Due to the appellant's experience in the field, the appellee/defendant was granted an assumption of risk instruction at trial. The Braswell Court disagreed, noting that the granting of an assumption of the risk instruction was reversible error. In addressing whether the defendant was in fact entitled to an assumption of risk instruction, the Braswell Court noted that since the adoption of this state's comparative negligence statute, presently codified as Miss. Code Ann. § 11-7-15, "the doctrine of assumption of risk has been recognized in some cases as a bar to an action by plaintiff and is deeply ingrained in the law of this state." Id. at 673. However, this Court, in Braswell, further noted that "the doctrine has been limited and restricted so that the application of the doctrines of assumption of risk and of contributory negligence to a particular factual situation poses a perplexing question, and where the two overlap and coincide, the absence of a definitive rule magnifies the problem." Id. To illustrate this problem, the Court then reviewed three prior decisions on the subject  Herod v. Grant, 262 So.2d 781 (Miss. 1972), Elias v. Bowl-A-Way Lanes, 245 Miss. 170, 146 So.2d 558 (1962), and Wallace v. J.C. Penney Co., Inc., 236 Miss. 367, 109 So.2d 876 (1959)  which applied the doctrines in different manners.
In Herod, the plaintiff was riding on the back of a truck at night while hunting predatory wild animals. The defendant was driving the truck when he saw a deer. In an attempt to run the animal over, the defendant accelerated. As a result, the plaintiff fell from the truck and was seriously injured. The sole issue before this Court on appeal was whether the plaintiff had assumed the risk of his injury. We held that in order to prove assumption of the risk the following elements must be proven:
1. knowledge on the part of the injured party of a condition inconsistent with his safety;
2. appreciation by the injured party of the danger in the condition; and
3. a deliberate and voluntary choice on the part of the injured party to expose his person to that danger in such a manner to register assent on the continuance of the dangerous condition.
Braswell, 281 So.2d at 674 (quoting Herod, 262 So.2d at 782-783).
In Herod, this Court concluded that the plaintiff had in fact assumed the risk "for which no liability extends to the defendant." Id. The Braswell Court agreed with this decision, stating that "[t]he doctrine of assumption of risk was properly applied to the unusual facts of this case and it represents one of the rare instances where it is applicable." Braswell, 281 So.2d at 675. (emphasis added).
In Elias, a plaintiff was injured at a bowling alley as the result of a sticky substance on the bottom of his shoe. The substance kept the plaintiff's foot from sliding, thereby resulting in his injury. The trial court granted a peremptory instruction for the defendant bowling alley, but this Court reversed and remanded, stating "[h]owever, we also feel that it is a case that should have gone to the jury under proper instructions as to the assumption of risks and contributory negligence involved in the case. The case is therefore reversed and remanded." Braswell, 281 So.2d at 675 (quoting Elias, 245 Miss. at 185, 146 So.2d at 564 (emphasis supplied)). We stated in Braswell that this solution, remanding for instruction on both doctrines, "did not clarify the perplexing problem of whether assumption of risk or contributory negligence should be applied to a given set of facts." Braswell, 281 So.2d at 675.
We then turned to our decision in Wallace v. J.C. Penney Co. Inc., 236 Miss. 367, 109 So.2d 876 (1959). In Wallace, the injured plaintiff was granted an instruction on assumption of the risk. The Wallace Court held the instruction constituted error, but not reversible error, in that the plaintiff did not have a cause of action. In discussing the propriety of the assumption of risk instruction, the Wallace Court stated:

*1305 This instruction was error because it erroneously applied the assumption of risk doctrine, which is pertinent when a party voluntarily and knowingly places himself in a position or submits himself to a condition, appreciating that injury to himself is likely to occur at any time so long as such position or condition continues. (citations omitted). The instruction stated that, if the jury believed plaintiff knew and appreciated the danger, `or should have seen, known and appreciated the danger by the exercise of her own reasonable care', and she slipped and fell and was injured, then the jury should find for defendant. This eliminates any distinction between assumption of risk and contributory negligence. Under our comparative negligence statutes, Miss. Code 1942, Secs. 1454, 1455, the instruction was also error because it denied the jury its right to weigh the respective negligence, if any, of the parties. (citation omitted) (emphasis supplied).
Braswell, 281 So.2d at 676 (quoting Wallace, 109 So.2d at 877).
The Braswell Court noted that the assumption of risk instructions with which it was confronted suffered the same error that was "pointed out in Wallace; viz., the instructions deny the jury the right to weigh the respective negligence, if any, of the parties." Braswell, 281 So.2d at 676. (emphasis added). The Braswell Court further stated:
In this case the doctrine of assumption of risk overlaps and coincides with contributory negligence. Since assumption of risk is a bar to recovery, but contributory negligence is not under our comparative negligence statute, we see the necessity of adopting a rule to govern cases where the two overlap and coincide.
We do not abolish the doctrine of assumption of risk, but where assumption of risk overlaps and coincides with contributory negligence the rules of the defense of contributory negligence apply. Braswell, 281 So.2d at 677.
In holding that the rule of comparative negligence controls when the two theories overlap, the Braswell Court noted that "this rule does not prevent a defense on the ground that a plaintiff's injury was caused by his negligence, if his negligence was the sole proximate cause of his injury." Id. We held that where the facts shown caused the separate doctrines of assumption of risk and comparative negligence to overlap, the rules of contributory negligence controlled and applied. Therefore, we reversed for the jury to consider the contributory negligence, if any, of the plaintiff.
Since our opinion in Braswell, we have had occasion to discuss the distinction between the doctrines of assumption of risk and comparative negligence on several occasions, each time noting the difficulty of making a distinction. In Hill v. Dunaway, 487 So.2d 807 (Miss. 1986), the appellant objected on appeal to the trial court's granting of a comparative negligence instruction to the jury. In Hill, we held that "the instruction correctly state[d] the law and was amply supported by the evidence." Id. at 809. During the course of the Hill opinion, we noted "the unclear distinction between contributory negligence and assumption of risk." Id. at 810. While not necessary for resolution of the dispute in Hill, we nevertheless stated in a footnote:
We recognize that there is some movement in other states toward elimination of the strict doctrine of assumption of risk and coalescing the notion theretofore expressed into the affirmative defense of contributory negligence. See Li v. Yellow Cab Company of California, 13 Cal.3d 804, 119 Cal. Rptr. 858, 872-74, 532 P.2d 1226, 1240-42 (1975); Wilson v. Gordon, 354 A.2d 398, 402-03 (Me. 1976); Note, Contributory Negligence and Assumption of Risk  The Case For Their Merger, 56 Minn.L.Rev. 47 (1971). That argument has been pressed before this Court. See Nichols v. Western Auto Supply Co., Inc., 477 So.2d 261, 264 (Miss. 1985). While today's case is certainly not the occasion to resolve definitely such a question, we note that trend for it lays bare the reality that assumption of risk is only an artificial way of denominating a plaintiff's negligence. Such negligence is available defensively and may diminish recovery according to our familiar comparative negligence rule. See Miss. *1306 Code Ann. § 11-7-15 (1972); Mitchell v. Craft, 211 So.2d 509, 513 (Miss. 1968).
Dunaway, 487 So.2d at 810, n. 1. (emphasis added).
Finally, in McDaniel v. Ritter, 556 So.2d 303 (Miss. 1989), the plaintiffs asked for but were denied a comparative negligence instruction. The trial court, however, granted an assumption of the risk instruction. A verdict was returned in favor of the defendants. Recognizing his error in granting the assumption of the risk instruction, the trial judge ordered a new trial. This Court agreed, holding that the evidence did not support the granting of an assumption of the risk instruction and that the trial court correctly granted a new trial. In his dissenting opinion in McDaniel, Justice Sullivan addressed whether "assumption of the risk should be treated the same as contributory negligence under Mississippi's comparative negligence statute." Id. at 319. Justice Sullivan followed with a discussion of this Court's decisions which addressed the distinction between assumption of the risk and comparative negligence, ending with the decision in Hill v. Dunaway, 487 So.2d 807 (Miss. 1986). See Braswell v. Economy Supply Co., 281 So.2d 669 (Miss. 1973); Wallace v. J.C. Penney Co., Inc., 236 Miss. 367, 109 So.2d 876 (1959); Saxton v. Rose, 201 Miss. 814, 29 So.2d 646 (1947). Justice Sullivan wrote:
The Hill case brings the Court to where it is today, waiting for the right case to once and for all abolish the doctrine of assumption of the risk and treat all fault under the comparative negligence statute. Gaiennie [McDaniel] is such a case. It is an example [of] how even with the best intentions the doctrines of assumption of the risk and contributory negligence are still confused.
In this case the argument was made that Ritter had enough information prior to the flight to make his decision to fly "knowing and voluntary" thus qualifying for an assumption of the risk instruction. In reality, a comparative negligence instruction was more appropriate to the facts since there was insufficient evidence to show that Ritter had enough weather information to make his decision to fly "knowing and voluntary." Despite the guidelines set forth in Braswell and Singleton limiting the use of the doctrine, an assumption of the risk instruction was given. This confusion shows that, regardless of good intentions or the diligence of the judge, as long as assumption of the risk continues as a separate doctrine it will continue to be confused with comparative negligence doctrine.
What should have been done in the case at bar was state that Ritter was careless as a pilot in accompanying Speakes on the flight without further investigation of the weather conditions. This carelessness should have been used to reduce any award or if the jury found this carelessness serious enough to prohibit any award. Yet, because assumption of the risk is still a valid doctrine, it was mentioned, which caused the judge to rethink his decision and grant a new trial.
If assumption of the risk had not been available as a separate doctrine prior to this trial, the cost of a retrial could have been saved. The doctrine should be incorporated into the doctrine of contributory negligence and covered by Mississippi's comparative negligence statute, § 11-7-15. For no reason other than to alleviate further confusion when the doctrine is merged, the new concept should be titled comparative fault rather than comparative negligence. This new title would more properly reflect the purpose of the doctrine. When the plaintiff is partly at fault for the injuries he receives, his recovery should be reduced, and when the plaintiff is totally at fault, his recovery should be barred. McDaniel, 556 So.2d at 320.
The cases discussed above illustrate the problems we have had wrestling with the distinction between assumption of the risk and comparative negligence. The groundwork, however, has been laid for the Court to abolish the doctrine outright and merge it with comparative negligence. Therefore, I would take this opportunity to do just that and abolish the doctrine of assumption of the risk. In so doing, I note that the merging of these two doctrines "lays bare the reality that assumption of risk is only an artificial way of denominating a plaintiff's negligence." Dunaway, 487 So.2d at 810, n. 1. Moreover, as we stated in Braswell, any other approach *1307 would be to deprive the jury of its statutory mandate to apportion the negligence of the parties. Braswell, 281 So.2d at 676; Miss. Code Ann. § 11-7-15. Abolishing assumption of the risk as a separate doctrine would greatly eliminate the resulting confusion when the doctrines overlap and would also more closely track the provisions of Miss. Code Ann. § 11-7-15 which states:
§ 11-7-15. Contributory negligence no bar to recovery of damages  jury may diminish damages.
In all actions hereafter brought for personal injuries, or where such injuries have resulted in death, or for injury to property, the fact that the person injured, or the owner of the property, or person having control over the property may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured, or the owner of the property, or the person having control over the property.
Returning to the present case, the evidence presented by the plaintiffs demonstrated that, although Horton was truly unaware of the magnitude of the health risks associated with smoking, he was aware, to a certain extent, of such problems. It was at least arguable that Horton was partly responsible for his own death. Therefore, it is clear that a comparative negligence instruction was properly granted. On the other hand, the defendants urged that an assumption of the risk instruction was proper in that evidence demonstrated that Horton was or should have been well aware of the health hazards associated with smoking, that he appreciated this risk, and that he continued smoking despite this knowledge. As such, under Mississippi law as it now stands, there appeared to be enough evidence that the trial court did not err in granting such an instruction. Consequently, the facts presented caused the theories to overlap. Therefore, the rules of comparative negligence apply and control.
Assuming that the jury was properly instructed, the problem arises due to the form of the jury's verdict, i.e., a verdict for the plaintiffs as to liability but an award of $0 damages. Under assumption of the risk theory, if a plaintiff is found to have assumed the risk of his own injury, he is, in fact, the sole proximate cause of his injury and thus, no liability lies on the defendant; in other words, assumption of the risk is an affirmative defense which serves as an absolute bar to a plaintiff's recovery. In finding for the plaintiffs on the question of liability, the jury necessarily found that Horton's conduct was not the sole proximate cause of his injury; if they had, they simply would have found for the defendants. Having reached the conclusion, by necessity, that the jury rejected the assumption of the risk claim, and as such found the defendants partly responsible for Horton's death, it becomes clear that the jury disregarded the instruction on comparative negligence. The issue thus becomes what is the proper remedy  additur, a new trial on the issue of damages alone, or a new trial as to all issues.
The defendants in the case at bar claim the same thing as did the defendants in Harrison v. Smith, 379 So.2d 517 (Miss. 1980); that is "that the language of the verdict was clear that the jury was finding for the defendants; that the jury had found that even though appellees were negligent, this negligence was not a proximate contributing cause of plaintiff's injury." Harrison, 379 So.2d at 518. However, the verdict is clear only in that it clearly establishes that the jury found against the defendants and found that cigarettes are unreasonably dangerous. Therefore, the case must be reversed on the issue of damages and a new trial granted.

CONCLUSION
Based on the extensive evidence in the record that Nathan Horton was unaware of the magnitude of the risks associated with cigarette smoking and the somewhat less conclusive (but nevertheless sufficient to support a jury verdict) evidence that cigarette manufacturers willfully increased the risk of addiction while simultaneously suppressing and minimizing significant data correlating smoking and health problems, I can only conclude that the trial court was compelled to allow the strict liability and negligence claims to go to the jury. Unfortunately, the negligence *1308 claim was erroneously dismissed. In spite of this error, the jury still found against the defendants and in favor of the plaintiffs  but awarded "0" damages. Accordingly, I would affirm the jury verdict for the plaintiff and remand for a determination of damages. Therefore, I concur in part and respectfully dissent in part.
SULLIVAN, PITTMAN and McRAE, JJ., join this opinion.
BANKS, J., joins this opinion in part.
McRAE, Justice, concurring in part and dissenting in part:
Under the theory of strict liability or negligence, the defendant tobacco manufacturers are charged with the same duty as that adopted used by the American Society of Engineers, which requires the safety of the public to be paramount, and that one injury or death is one too many if it reasonably can be prevented. Any risk of serious injury or death is always unacceptable if reasonable prevention methods can be taken to eliminate or minimize the risk. The same philosophy applies to protecting the public health. I agree with the majority only as to affirming the judgment of liability against the appellees. I further agree with Presiding Justice Dan Lee's well-reasoned opinion that the assumption of risk doctrine should be abolished; but write to note the error in granting both an assumption of risk and a comparative negligence instruction in this strict liability claim. The defendants maintained throughout this appeal that Horton was not negligent[1] because their product did not cause cancer, but argued, at the same time, that Horton assumed the risk by smoking their cigarettes. This case should be remanded to the lower court for a determination of damages, or at best a new trial, since the jury's decision was based on erroneous instructions.
As far back as 1918, this Court found a tobacco company liable for inserting a putrid, decayed human toe in its tobacco, which caused the plaintiff to contract ptomaine poisoning. Pillars v. R.J. Reynolds Tobacco Co., 117 Miss. 490, 78 So. 365 (1918). We stated then:
Anything taken into the mouth there to be masticated should be free of those elements which may endanger the life or health of the user ... We believe that the way the tobacco is to be used furnishes the reason for great care in its preparation. If we eat food or drink beverages containing substances which under certain conditions may endanger our lives, for obvious reasons, he who prepares the food or drink should be required to exercise great care to prevent the dangerous conditions.
Pillars, 78 So. at 366.
The trial judge dismissed Horton's negligence claim in response to the defendants' motion for a peremptory instruction, and the case was submitted to the jury solely on a strict liability theory. When the jury instructions were granted, the negligence action was still viable, but after the peremptory instruction was granted, the instructions lost all value. The doctrine of comparative negligence should not have been submitted to the jury since both doctrines are used only when a negligence claim exists. In employing the risk-utility doctrine in strict liability claims, as this Court articulated in Sperry-New Holland v. Prestage, 617 So.2d 248 (Miss. 1993), the product, not the consumer, is on trial. Whether the consumer assumed the risk or was at fault is not relevant in a strict liability claim. In Prestage, supra, the following analysis was provided:
We explained this distinction in Hall v. Mississippi Chemical Express, Inc., 528 So.2d 796 (Miss. 1988), noting that "[t]he proper focus in a strict liability case is upon the utility and safety of the product in view of its intended function rather than on the manufacturer's fault or lack thereof." Id. As further distinguished from the negligence cause of action, open and obvious or comparative negligence are not affirmative defenses to strict liability. Rudisaile v. Hawk Aviation, Inc., 92 N.M. 575, 577, 592 P.2d 175, 177 (1979). "The existence of due care on the part of the consumer is irrelevant." Id.; Berkebile v. *1309 Brantly Helicopter Corporation, 462 Pa. 83, 337 A.2d 893 (1975). Since negligence is not an element considered under the strict liability theory, any defenses a defendant would use to attack a claim of negligence are not applicable. Therefore, the award of damages in a strict liability case cannot be reduced by any comparative negligence on the part of the plaintiff. Under the strict liability theory, the product is being tried, not the user or the consumer.
Prestage, 617 So.2d at 264-65 (McRae, J., concurring) (emphasis added). Obviously, since the lower court dismissed the negligence theory in toto, it was error to grant the assumption of risk and the comparative negligence instructions. Although the majority correctly points out that damages could actually be reduced to zero dollars by comparative negligence, the theory of comparative negligence must first be applicable to the case presented. In this case, an instruction on comparative negligence was not appropriate. Because the court took away the negligence theory, it should have also taken away the jury's consideration of the pure comparative negligence instruction.
Under a strict liability claim, a plaintiff need only prove the following three elements:
(1) that the plaintiff was injured by the product,
(2) that the injury resulted from a defect in the product which rendered it unreasonably dangerous, and
(3) that the defect existed at the time it left the hands of the manufacturer.
Toliver v. General Motors Corp., 482 So.2d 213, 216 (Miss. 1985). The risk-utility analysis, which balances a product's utility against its risk of injury, is utilized to determine if the product was defective or "unreasonably dangerous." Prestage, 617 So.2d at 254. There are seven factors which enter into the process of balancing risk of injury versus the utility of the product. They are as follows:
(1) The usefulness and desirability of the product  its utility to the user and to the public as a whole.
(2) The safety aspects of the product  the likelihood that it will cause injury, and the probable seriousness of the injury.
(3) The availability of a substitute product which would meet the same need and not be as unsafe.
(4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
(5) The user's ability to avoid danger by the exercise of care in the use of the product.
(6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
(7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.
Id. at 256 n. 3, citing John Wade, On the Nature of Strict Tort Liability for Products, 44 Miss.L.J. 825 (1973). Two of these factors, (5) and (6), certainly encompass some consideration of the user's behavior. However, these factors are used in determining whether the utility of the product is outweighed by the danger it creates. Any notions of contributory negligence are used to determine the question of liability. In other words, a plaintiff's contributory negligence may possibly absolve a defendant of liability. However, once the jury has found liability for a defective product, damages are not reduced by the doctrine of comparative negligence. Otherwise, the jury is permitted to utilize the same act of contributory negligence two separate times, once to possibly exonerate the defendant of liability, and again to further reduce damages. This is contrary to the theory of products liability and the risk-utility analysis we adopted for products liability actions in Prestage. Since the comparative negligence instruction impermissibly allows the jury to place undue weight on any contributory negligence attributable to the plaintiff, a pure comparative negligence instruction is not applicable to a products liability case.
"The law of the case, in whatever form presented, is for the court to determine. It *1310 is the province of the court to instruct the jury on the law applicable to the case." Burrell v. Goss, 245 Miss. 420, 425, 146 So.2d 78, 80 (1962). While it was the plaintiff's comparative negligence instruction which was submitted to the jury, it was the judge's duty to determine the applicable law and to submit only appropriate instructions to the jury. The trial judge was responsible for rejecting the plaintiff's claim of negligence. Consequently, he was charged with throwing out the instructions regarding defenses which are only applicable to negligence.
Since the product is being considered, as opposed to the consumer's conduct, assumption of risk in a strict liability claim also has no place. However, this Court has held, and has yet to specifically overrule its holding, that the doctrine of assumption of the risk is applicable in the proper case based on strict liability in tort. Nichols v. Western Auto Supply Company, 477 So.2d 261, 264 (Miss. 1985). Nichols, however, is impliedly no longer the law after Prestage. Instead, this Court is moving away from allowing assumption of risk as a complete defense.
In McDaniel v. Ritter, 556 So.2d 303 (Miss. 1989), Justice Sullivan, in a separate opinion, questioned whether assumption of risk is a separate doctrine under Mississippi's comparative negligence law, noting that as early as 1973, we addressed the conflict between assumption of the risk and contributory negligence. Braswell v. Economy Supply Co., 281 So.2d 669 (Miss. 1973), first limited the use of the assumption of the risk defense. See Singleton v. Wiley, 372 So.2d 272, 274-75 (Miss. 1979). In Nichols, we deviated from the trend of limiting the defense of assumption of risk. The Nichols decision allowed an instruction, but conceded that assumption of the risk was considered as contributory fault in most other jurisdictions. After Nichols, we returned to allowing the defense. See Hill v. Dunaway, 487 So.2d 807, 810 (Miss. 1986). As Justice Robertson stated in a footnote in Hill, "[W]e note the trend [toward elimination of the strict doctrine of assumption of risk] for it lays bare the reality that assumption of risk is only an artificial way of denominating a plaintiff's negligence."
Assumption of risk has been defined as follows:
The defense of assumption of risk presupposes (1) that the plaintiff had some actual knowledge of the danger; (2) that he understood and appreciated the risk therefrom, and (3) that he voluntarily exposed himself to such risk. Therefore, except where he expressly so agrees, a plaintiff does not assume a risk of harm arising from the defendant's conduct unless he then knows of the existence of the risk and appreciates its unreasonable character, or the danger involved, including the magnitude thereof, and voluntarily accepts the risk.
57 Am.Jur.2d, Negligence, § 281, p. 674 (1971). See Braswell v. Economy Supply Co., 281 So.2d 669 (Miss. 1973).
Clearly, the nicotine that tobacco companies add to the natural tobacco plant make a cigarette addictive and defective. This addiction causes continued exposure to a substance which causes cancer and ultimately, death. The evidence revealed at trial definitely proved that cigarettes and the nicotine contained therein are hazardous to one's health. The panel of experts all agreed that Horton died as a result of the unreasonably dangerous additive of nicotine. Dr. David Burns testified that forty percent of the people who smoke cigarettes will die prematurely. This testimony was corroborated by the testimony of Dr. Karl Heinz Ginzel, Dr. Kenneth Warner, Dr. Edward Popper and Dr. Richard Pollay. Interestingly enough, Dr. Pollay testified that the defendants previously had spent millions of dollars in an attempt to lower society's perception of the harm of smoking. This nicotine additive is no different from adding arsenic to food. Both are deadly; arsenic just kills faster than nicotine. When an individual smokes a cigarette, it is primarily for the high, not the taste. One does not buy the cigarette because he wants to be addicted, yet this addiction is what the nicotine eventually causes. Cocaine is said to have once been an additive in the drink Coca-Cola, which was eliminated for obvious reasons. What is the difference in the additives nicotine and cocaine? The simple answer is that there exists no difference since *1311 both make the product to which it is added more enjoyable and more addictive.
Although the defendants in this action were granted an assumption of risk instruction, they denied, even as late as oral argument, that any risk exists in smoking. Nevertheless, they also argued that Horton was an adventurous risk taker. The defendants should not be permitted to claim assumption of risk where they deny the existence of a risk. The American Tobacco Company's position is that cigarettes are not injurious to health. Robert K. Heimann, the company's former chief executive officer, testified that the public should definitely rely on its position. If so, how can Horton assume a risk, when from the company's standpoint, there is no risk? In order for the assumption of risk defense to apply, there must first be a risk. What specific risk did the companies plead? The movant has to identify the risk, admit that it caused the risk and finally, demonstrate that the plaintiff knowingly and intelligently "assumed" the risk. Furthermore, the tobacco company simply refused to acknowledge that the primary risk of using their product is addiction.
Evidence was produced which disputed the remaining elements of this affirmative defense. Although there was overwhelming factual evidence that cigarette smoking was a serious health hazard, the testimony by the defendants' witnesses clearly supported the conclusion that Horton did not and could not have appreciated the true risks of cigarette smoking. Heimann testified that the American Tobacco Company actively attempted to instill the belief among the public that it was not dangerous to smoke its brands of cigarettes. Horton, who testified through depositions taken in 1986 because of his death prior to trial, stated that he had become addicted to cigarettes and had not given much credence to the warnings which, at best, were minimal. The first time any doctor warned him of the dangers of smoking was only in 1986. A 1985 national health interview survey reported that smoking increased the chance of developing lung cancer. This report was followed by a Surgeon General's report confirming the hazards. By this time, it was too late for Horton. He died in 1987. He explained that the main reason he smoked unfiltered Pall Mall cigarettes was because he could get the most for his money with them. Where was the warning stating that smoking was extremely addictive due to high nicotine content? The defendants even admitted that they long fought the government's attempts to require warnings. All of the evidence produced by the defense showed that Horton did not appreciate the risk of smoking. The overwhelming weight of the evidence simply refuted the defense's affirmative defense of assumption of the risk.
Horton could not have assumed any risk because he smoked for thirty years before the dangers of cigarettes were known or acknowledged. Even now, a warning that simply reads, "Cigarette smoking could be hazardous to your health," or that, "Quitting smoking now greatly reduces serious risks to your health," does not alert smokers to the addictive qualities of cigarettes. A manufacturer, in a strict liability case, if it cannot protect the consumer, may absolve itself of liability by placing a warning notice that intelligently warns the consumer. However, the defendant in this case failed to warn of the real danger  nicotine is addictive and causes serious injury and/or death. Do not smoke. The manufacturer could greatly reduce the risk by simply extracting nicotine from its product.
As Justice Lee notes, we have adopted a risk utility analysis as opposed to a consumer expectations test in strict liability claims. Formerly, the "patent danger" defense applied and prohibited one from recovering when the danger was open and obvious. See Toney v. Kawasaki Heavy Indus., Ltd., 975 F.2d 162, 165 (5th Cir.1992). Currently, whether a danger is open and obvious is just a factor to consider in determining whether the product was unreasonably dangerous. Prestage, 617 So.2d at 256 n. 4. This can be likened to assumption of risk. While cigarettes today obviously may be dangerous to one's health, that danger was not open and obvious to Horton or anyone else in the 1950s and 1960s. Even if it had been, it would be but one factor to consider under the risk utility analysis, not a complete bar to recovery of damages.
An assumption of risk instruction has no place in our jurisprudence today. It is nothing *1312 but a form of comparative negligence. As the majority in Prestage stated, "a manufacturer is charged with the duty to make its product reasonably safe, regardless of whether the plaintiff is aware of the product's dangerousness." Id. at 256. Obviously, if the defendant was negligent in creating a risk and encouraging individuals to continue smoking by adding a narcotic substance, then defendant should be held accountable, particularly in Mississippi.
If a danger is obvious to the plaintiff, then it is obvious to the defendant. This Court should encourage a defendant to correct unreasonably dangerous conditions and products, not to promote them and prosper from them. Although Chief Justice Hawkins argues to the contrary, the cigarette manufacturers, themselves, regard cigarettes as products. Perhaps we should label them a food substance, so that absolute liability would control.
Mississippi should erect billboards at all state lines which read, "Welcome to Mississippi, where cigarette manufacturers need not pay the price for the damages their products cause." Today's opinion makes it cost-effective for tobacco companies across America to maim, injure and kill in Mississippi. Accordingly, while I agree with the finding of liability, I dissent with respect to damages.
DAN M. LEE, P.J., joins this opinion in part.
NOTES
[1] The purpose behind the humane "risk utility" analysis we adopted in Sperry-New Holland is analogous to the purpose behind the statutory abolition of the defense of assumption of risk in cases between an employee and employer for injuries caused by the negligence of the master. Miss. Code Ann. § 11-7-19 was first enacted by our Legislature in 1917, Hemingway's Code § 1917, and has been the law ever since. "A servant is not free when disobedience of his master means loss of his job." Goodyear Yellow Pine Co. v. Mitchell, 168 Miss. 152, 149 So. 792, 793 (1933). This Court, however, never extended the statute to situations beyond the servant's injury on the job. Neither should this Court extend the "risk utility" analysis to situations in which the plaintiff is not required to use a product in order to make a living for himself or family.
[2] I approach a bridge in a truck weighing 10,000 lbs., and see a sign just before entering the bridge, which I stop to read. The sign says, "WARNING, This bridge is dangerous for trucks weighing over 5,000 lbs." I know my truck weighs 10,000 lbs., yet I decide to proceed, anyway. Clearly, I have assumed the risk; it is not negligence or oversight, but a deliberate choice.
[3] Negligence requires that a defendant breach a duty before liability may be found. Carpenter v. Nobile, 620 So.2d 961, 964 (Miss. 1993). Here there is no assertion that the defendants breached such a duty by failing to act as reasonably prudent cigarette manufacturers in the production of the cigarettes. Here the cigarettes performed just as the manufacturers intended, and just as Horton hoped and desired.
[4] The plurality and dissent have now held that there is absolute liability on the part of every tobacco company. Except for Miss. Code Ann. § 11-1-63, under the plurality and dissent, in every lawsuit filed against any tobacco company under products liability law, recovery would depend entirely upon the degree to which the jurors under their own particular view chose to hold the plaintiff contributorily negligent.
[1] Counsel for the appellees stated again in oral arguments that they neither pleaded nor presented the theory of comparative or contributory negligence.